Argued January 3, affirmed as modified March 5, 1952

# PORTLAND GENERAL ELECTRIC CO. v. CITY OF ESTACADA
### 241 P. 2d 1129

146

*George L. Hibbard,* of Oregon City, argued the cause for appellant. With him on the brief were Beattie & Hibbard, of Oregon City, and John C. Caldwell, of Oregon City.

*H. H. Phillips,* of Portland, argued the cause for respondent. With him on the brief were Griffith, Phillips and Coughlin, of Portland.

LATOURETTE, J.

Appeal by the city of Estacada from a decree restraining and enjoining it from including within its boundaries the "River Mill Plant" belonging to plaintiff which the city sought to annex under ch. 210, Oregon Laws 1949. The decree held that the annexation proceedings were void as to plaintiff's property since they were instituted for the sole purpose of taxing plaintiff's land and were unreasonable and unlawful, and also enjoined the assessor and the sheriff from assessing the property and collecting taxes on it, respectively.

The city's first proposition, raised on appeal for the first time by a challenge to the sufficiency of the com-

plaint, is that quo warranto would be plaintiff's sole remedy and that an injunction suit will not lie. The following cases are authority for the propriety of an injunction suit to test the validity of annexation proceedings: *Thurber v. McMinnville,* 63 Or 410, 128 P 43; *Landess v. City of Cottage Grove,* 64 Or 155, 129 P 537; *Couch v. Marvin,* 67 Or 341, 136 P 6; *Cooke v. Portland,* 69 Or 572, 139 P 1095; *Spence v. Watson,* 182 Or 233, 186 P2d 785.

The city contends that on authority of *State ex rel. v. Port of Tillamook,* 62 Or 332, 124 P 637, quo warranto is the exclusive remedy to attack an annexation proceeding. In that case we held that quo warranto is a proper proceeding, but we did not hold that it was exclusive.

The city further urges that the above cases are distinguishable from the case at bar because in those cases the proceedings were declared void in that the cities did not comply with some essential procedural requirement. This contention is not accurate since, in several of the cases above cited, the annexation was attacked on grounds other than the validity of the machinery leading up to the election. It is true, however, that none of the cases went so far as to hold that a suit in equity would be proper in a proceeding of this kind where it was necessary to consider matters *aliunde* the record.

■ There is respectable authority in the early Oregon cases for the proposition that where a corporation is *de facto* rather than *de jure* quo warranto is the sole remedy. Since there is a wide cleavage of opinion among the members of this court as to which remedy is appropriate in the present case, we are of the opinion that on the record made we may treat this as one for

a declaratory judgment under § 6-602, OCLA, which follows:

"* * * Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.";

it being remembered that the declaratory judgment statute is a remedial statute and is to be liberally construed and administered, and that questions of fact may be tried and determined as in other cases.

Since the city did not question in the lower court the bringing of the injunction suit, and joined issue and, after an adverse decision, appealed the case and now challenges, for the first time, the propriety of the same, in the interest of justice and to terminate litigation, it is our duty to decide the questions at issue on the merits, if we may properly do so.

The assessor and the sheriff have not appealed from the injunction decree against them. There remains a justiciable controversy between the parties involving the question of the proper exercise of a municipal franchise conferred on the city by the annexation statute.

In Anderson, Declaratory Judgments, 2d ed, 712, § 309, we read:

"A Declaratory Judgment will be granted even when not prayed for, but some other relief is asked, as an injunction, or where the prayer is in conjunction with a request for other relief, or where the application for other relief is abandoned, or where relief prayed for is denied. Indeed the Court may of its own motion grant declaratory relief in the

absence of any prayer. So too, a declaratory judgment may be made in response to a prayer for general relief, although inserted with other prayers for different relief.''

We find in § 9-102, OCLA, that, ''No cause shall be dismissed for having been brought on the wrong side of the court.''

In the case of *Miles et al. v. Veatch et al.,* 189 Or 506, 535, 220 P2d 511, 221 P2d 905, it appears from the amended complaint that the plaintiffs based their cause of suit on the theory that the statute was null and void; that the enforcement of the same would result in irreparable loss and damage to them; that they had no plain, adequate or speedy remedy at law; and that the prayer prayed for a decree declaring the act null and void and perpetually enjoining the law enforcement officials from attempting to enforce the statute. We construed the proceedings as one for a declaratory judgment. On petition for rehearing, it was insisted by the plaintiff that the suit was brought as an injunction suit ''for the purpose of procuring an injunction to prevent threatened injury to their property and property rights.'' We said:

''\* \* \* Even if that were so, the relief sought involved an adjudication that the initiative act was unconstitutional, and, therefore, was declaratory in character. 16 Am. Jur., Declaratory Judgments, § 3. The amended complaint might have been based upon either the uniform declaratory judgments act (§§ 6-601 to 6-616, O. C. L. A.) or the injunction statute. We construed it as being based upon the former, by reason of the fact that it prayed for a decree 'declaring said initiative act \* \* \* null and void in its entirety'. We were of the opinion that such a prayer indicated that the pleaders conceived that they had made a case for a declaratory decree. 41 Am. Jur., Pleading, § 110.''

Professor Borchard on Declaratory Judgments, 2d ed, said, at p. 362:

"* * * Since *quo warranto* is a traditional writ of ancient lineage, an occasional court will conclude that it is the indicated method of trying title to office or the validity of an election or other public act. But most courts have readily perceived that the declaratory judgment is a vehicle of relief of equal efficacy with *quo warranto* for the determination of the rights of the parties, while having the advantage of escaping some of the restrictions of *quo warranto,* * * *."

On p. 341 of Declaratory Judgments (published in 1934), Professor Borchard said:

"* * * With the ever-greater interference by government in the affairs of private individuals, it often becomes important to the individual to test the validity of the interference, present or proposed, before it is applied or invoked against him. * * * As a rule, the mere enactment of a statute or ordinance imposing restraints on an individual and implying enforcement by prosecuting officials threatens and hampers the plaintiff's freedom, peace of mind or pecuniary interests, and creates that justiciability of the issue which sustains a proceeding for an injunction and, *a fortiori,* for a declaratory judgment."

It is suggested that since the attorney general was not served with a copy of the proceedings, a constitutional question being involved, we would have no jurisdiction to declare a judgment. It is true that the statute states that the attorney general must be served with a copy of the proceedings where, " * * * the constitution, statute, charter, ordinance or franchise is alleged to be unconstitutional, * * *". This provision becomes unimportant, however, since we have not passed on the constitutionality of the ordinance in-

volved. See Borchard on Declaratory Judgments, 2d ed, p. 275.

In the case of *School Dist. No. 1 v. School Dist. No. 45*, 148 Or 554, 570, 37 P2d 873, a declaratory judgment proceeding was instituted to determine the validity of the consolidation of two school districts. It was urged that quo warranto was the appropriate remedy, Point No. II of the appellant school district's brief being as follows: "Only the State in a direct proceeding can attack the validity of the formation of a school district, changing the boundary lines, consolidating it or annexing it to another." In disposing of this question, we said:

"* * * We think that this remedy by proceeding under the declaratory judgment law should not be denied to the parties hereto merely because a proceeding in the nature of quo warranto might also be invoked."

In *Tompkins v. District Boundary Board*, 180 Or 339, 177 P2d 416, the declaratory judgment act was invoked by a property owner to obtain an adjudication of the validity of the consolidation of various school districts, it being alleged that he would " 'suffer irreparable injury and the taxes on plaintiff's property will be materially increased to plaintiff's detriment' " unless the election was declared illegal and void. For the first time on appeal, as in the case at bar, it was contended that quo warranto was the sole remedy to test the validity of the consolidation. We cited, with approval, *School Dist. No. 1 v. School Dist. No. 45*, supra. In the Tompkins case, it was asserted that under the authority of *State ex rel. v. School District No. 23*, 179 Or 441, 172 P2d 655, a quo warranto proceeding was the sole remedy where a *de facto* municipal corporation existed. We held that under § 6-602, OCLA,

plaintiff had the right to have the validity of the annexation determined since its rights were affected, and that quo warranto was not the sole remedy.

A declaratory judgment proceeding was invoked to determine the validity of the annexation of school districts in *Webb v. Clatsop Co. School Dist. 3,* 188 Or 324, 332, 334, 215 P2d 368. One of the justiciable issues upon which the case turned was whether or not the chairman of the school board closed the polls prematurely, thus depriving one Huckleberry, a registered voter, of voting. This involved a question *of fact not apparent on the face of the election records.* It appears that the election was conducted on daylight saving time rather than on standard time, and the election carried by a vote of 38 to 37. The trial court sustained the demurrer to the complaint as to the above issue. This court, sitting in banc and speaking through Mr. Justice HAY (there being in the case Justices LUSK and BRAND), reversed, holding:

"A justiciable controversy having been stated, the test of the sufficiency of the complaint was not whether or not it showed that plaintiffs were entitled to a declaratory judgment in accordance with their theory, but whether or not they were entitled to any declaration at all, even if they were mistaken in their theory. * * * Moreover, even though the plaintiffs had not been entitled to a favorable declaration upon the facts stated in their complaint, if the complaint stated a justiciable controversy between the parties the general demurrer thereto should have been overruled, and the controversy should have been determined by a judicial declaration."

We also said:

"* * * And it would seem that, the notices in the present case having informed the electors that

the meeting would be held from seven o'clock, p.m., to nine o'clock, p.m., on a day certain, the chairman and other election officials were obliged to keep the meeting and the polls open continuously between such hours. If they failed to do so, and if such failure resulted in plaintiff Huckleberry, a registered voter, being denied the right to exercise his franchise at the election, and if the lack of his vote was sufficient to change the result of the election, *as is alleged to be the fact,* then it would seem that the election would have to be set aside." (Italics ours).

The case was remanded with directions "for hearing upon such first cause of action." Upon such hearing, it would be necessary to go outside of the record of the election proceedings to determine whether or not one Huckleberry, a qualified registered voter, presented himself at the polls, whether or not the election polls had been prematurely closed, and on what side of the question he would have voted.

Webb's cause of action was based on the failure of the election officials to permit him to vote in the election. A trial was had on this issue, the action of the officials being upheld by the trial court. On appeal, after considering the evidence in the case, which obviously was evidence *dehors* the election records, we affirmed.

According to the authorities, the Webb case was a collateral attack; however, the declaratory judgment act makes no distinction between a collateral and a direct attack, or between a *de jure* or *de facto* corporation. If there is a justiciable issue between the parties wherein the legal status of a party is affected by a municipal charter or ordinance, he may "obtain a declaration of rights, status or other legal relations thereunder." The Webb case is authority for the prop-

osition that a declaratory judgment may be obtained where there is a jurisdictional defect not appearing on the face of the record.

In his dissent, Mr. Justice LUSK, in referring to the Webb case, brushes it aside on the ground that it does not appear that the consolidated district had "achieved *de facto* status * * * and in any event the question here debated was not raised or passed upon by the court." In the instant case, Estacada, for the first time on appeal, raised the quo warranto issue by asserting, "The complaint does not state facts sufficient to constitute a cause of suit." In passing upon the sufficiency of the complaint, therefore, we are confined to the allegations of the complaint. No reference is made in either the complaint or in the answer to a *de facto* corporation. To bolster his dissent on the *de facto* phase of the case, our esteemed associate has gone outside of the complaint and resorted to the evidence in order to draw his conclusion that Estacada, as annexed, is a *de facto* corporation because he alludes to $4,000 which was spent by the city in running water mains and a road into the annexed territory, but even this evidence falls far short of establishing a *de facto* status. The mayor of the city, over plaintiff's timely and proper objection, testified that the city had spent $4,000 in running water mains into the annexed territory and had built a disposal plant in the new portion of the city with a road leading to it.

Sections 95-1808 and 114-121, OCLA, authorize cities to extend water mains and build disposal plants outside the corporate limits of the city. How, then, can it be said that the improvements alluded to were accomplished under the above statutes or under some

other scheme? In our opinion, such inadmissible, flimsy evidence is insufficient to establish a *de facto* corporation.

As to the contention that the debatable question was not raised in the Webb case, suffice it to say that it was undoubtedly thought unnecessary to raise such a question since this court in *School Dist. No. 1 v. School Dist. No. 45,* supra, and *Tompkins v. District Boundary Board,* supra, had previously held that quo warranto was not an exclusive remedy, and that a declaratory judgment proceeding was appropriate to test annexation proceedings. Over a period of 18 years, this court has adhered to the rule that the declaratory judgment act could be employed to test the validity of annexation proceedings, which rule has attained a *stare decisis* status. We should proceed mighty slowly, and with sound and logical reasons, before we upset the apple cart of procedure. As pointed out by that eminent jurist, Chief Judge John J. Parker, of the U. S. Court of Appeals for the Fourth Circuit, in a recent address in Portland, the legal profession is destroying its very existence in a maze of procedural involvements and delays.

It cannot be denied that some jurisdictions hold that a declaratory judgment will not lie where plaintiff has another adequate remedy. One such case is *Skinner v. City of Phoenix,* 54 Ariz 316, 95 P2d 424, cited by Mr. Justice Lusk in his dissent. It will be observed that Arizona does not have a uniform declaratory judgment act. It lacks uniformity in that it contains no clause that the act is remedial or should be construed liberally. Our court is committed to the proposition that the declaratory judgment act may be employed to test the validity of annexation proceed-

ings, and that quo warranto is not the sole remedy. It will be noted that practically all of the Oregon cases holding that quo warranto is the sole remedy were decided prior to the passage of the declaratory judgment act in 1927. Anderson on Declaratory Judgments, vol. 1, 2d ed, 396, § 195, has the following to say:

"The holdings that a declaratory judgment action may be entertained without regard to the existence of another remedy, are not only sustained by the better reasons, but are more in harmony with the true spirit and purpose of the declaratory procedure."

*School Dist. No. 1 v. School Dist. No. 45,* supra, is cited in the footnote under that section.

Of those who are loathe to depart from the old order, Professor Borchard in the preface to Declaratory Judgments, 2d ed, has the following to say:

"The declaratory judgment exposes the anatomy of the judicial process and discloses the many obstructions to the administration of justice which the current legal system incorporates and tolerates. These obstructions, identified in the encumbrances and barnacles which have accumulated over the centuries around the procedural writs, are cherished by many judges and lawyers as indigenous to the system and to the judicial process. Hence many members of the bench and bar not unnaturally acquire the view that the technicalities characterize the profession and the system, and that they exist for the delectation and benefit of the votaries of the priesthood itself; they are inclined to forget that both bench and bar are merely servants of the people, the better to enable the administration of justice to be accomplished."

The judicial system has been endowed with the technicality curse from its inception, causing consonant delay and uncertainty and often enmeshing the real

issues to the great perversion of justice. One of the reasons for the enactment of the declaratory judgment act was to unloosen the fetters of procedural bondage.

In the case at bar there is a division of the court on the appropriateness of the remedy. Those in the minority would have this case dismissed and compel the plaintiff to resort to quo warranto. In such a situation, plaintiff would "hitch old Dobbin to the shay", drive to Oregon City and change drivers, that is, if the district attorney would allow himself to be placed in the driver's seat, since he, as such, represents two of the defendants in the present case in opposition to the contentions of plaintiff. Should he refuse to shift from one horn of the dilemma to the other, it would then be incumbent upon plaintiff to bring a mandamus proceeding to compel him to act in a quo warranto proceeding. After the matter was finally settled, plaintiff would return here with the same, or similar, record which we now have, with the ultimate result being the same.

The only difference we can see, in the two forms of relief, other than the name of the party-plaintiff, concerns the burden of proof. In quo warranto, the burden would be on the city to sustain the annexation, while, under the declaratory judgment act, the burden is upon the plaintiff to prove the illegal annexation. In both instances, the court has discretionary power to adjudicate on the merits, and the same defenses of laches, estoppel, etc., are available in either proceeding, so that if plaintiff were now required to bring a quo warranto proceeding, substance would be sacrificed to the goddess of form. "What's in a name? that which we call a rose, by any other name would smell as sweet."

This case has been before the courts for approximately two years, and another two years would elapse before a final determination. This matter is not only of great importance to the litigants but to the people of the community as well, and all are entitled to know at the earliest possible date what their status is, and we of the majority can see no justification for postponing action where the case was fairly tried on its merits in the circuit court, and it can be determined just as judicially now as later.

In the case at bar, it appears that there are two dissents in which it is argued that quo warranto is the proper proceeding, and two specially concurring opinions in which the thought is advanced that an injunction suit is the appropriate remedy. Could one think of a more cogent and impelling argument, when we ourselves are not in unanimity, for embracing the provisions of the declaratory judgment act?

The city raises the second proposition that, "The reasonable or unreasonable extension of city boundaries under the Oregon annexation statute is not a subject of judicial inquiry." Many cases are cited by the city to sustain its position, notably among them being the *City of Burlingame v. San Mateo County,* 90 Cal App2d 705, 203 P2d 807. The plaintiff counters with a like array of authorities to sustain its position that in annexation proceedings the question of the reasonableness of extension of corporate limits is subject to judicial review and cites *Vestal v. Little Rock,* 15 Ark 321, 15 SW 891, 16 SW 291, as its leading case. We gain little solace from the cases cited by both parties since they are in hopeless conflict.

The crucial question in this case is whether or not the city has the absolute right to annex contiguous

property irrespective of its reasonableness. Chapter 210, Oregon Laws 1949, in part, reads:

"Sec. 95-901. 1. The boundaries of any incorporated city now or hereafter existing in this state may be altered and contiguous new territory included therein after proceedings had as required by this section. Areas separated from cities only by streams or rivers shall be considered contiguous to such cities."

The act goes on further to provide machinery in furtherance of the annexation, including an election in the city and in the area to be annexed, after due notice.

■ In a number of the Oregon decisions to which reference is made above, it is definitely held that where a city in annexation proceedings violates the state law the annexation is void. From time immemorial, we have consistently held that in the interpretation of state statutes relating to the enactment of legislation or ordinances by a city that the same must be exercised reasonably and not arbitrarily; therefore, in statutes empowering cities to legislate annexation proceedings, there is implied within the legislative grant that such cities must legislate reasonably and not arbitrarily, and such reasonableness is a part of the legislative grant to the same extent as if it were written literally into the statute.

It must be presumed that the legislature in enacting this legislation was fully conversant with the decisions of this court that all ordinances passed by cities must be reasonable, and that it intended that annexation by cities should be effectuated reasonably. It would be absurd to think that the legislature intended that a city would have carte blanche authority to reach out its tentacles like an octopus and envelop property which

in no wise could be considered as beneficial to the city or to the property annexed. If this were not so, there would be nothing to prevent the cities from attaching to themselves territory far removed from the city environs by a narrow ribbon strip, so long as the property attached was contiguous. In *State ex rel. Bibb v. City of Reno,* 64 Nev 127, 178 P2d 366, 368, we find the following language:

"Chief Justice Shaw, famous Massachusetts jurist, said: 'It is necessary to put extreme cases to test a principle.' We will apply a test: Could Reno annex all farms, ranches and mines in the county? Could it annex a narrow strip to and then include Lake Tahoe? Or could it hurdle a hundred miles and annex a gypsum plant in northern Washoe County? The test shows respondents' position is unsound. It is well settled that a court may construe an annexation statute and determine whether it has been misapplied by a city council. An annexation which is arbitrary, unreasonable, unjust and unnecessary will be held invalid. McQuillin on Municipal Corporations, 2nd ed. revised vol. 1, secs. 291, 293."

Mr. McQuillin in 1 Municipal Corporations (rev), 2d ed, 801, § 291, has the following to say:

"* * * However, under most statutes the courts generally hold that the question of the reasonableness of extension of corporate limits is subject to judicial review, and if found unreasonable, will be declared void.

"The judicial view will be better understood by indicating a few general considerations which have influenced the courts. The conditions under which the municipal limits may be extended and territory annexed, and the nature of such territory, are well

outlined in general terms in an Arkansas case which is usually followed." (See cases in footnotes). See also 62 CJS, 127, § 44.

It is the settled law in Oregon that municipal corporations, in exercising their powers, granted either by the legislature or by their charters, cannot exceed the powers granted them nor can they exercise such granted powers in an unreasonable manner. In *Sloan v. Baker,* 139 Or 370, 374, 10 P2d 362, we quote, with approval, 1 McQuillin, Municipal Corporations, 2d ed, § 367:

" 'As relates to the exercise of powers it is generally regarded that municipal corporations have none of the elements of sovereignty, that they cannot go beyond the powers granted them, and that they must exercise such granted powers in a reasonable manner. These are legal propositions well settled, and are everywhere enforced by judicial judgments.' "

The city next argues that the annexation proceedings were, in fact, reasonable. The trial court found that they were not. The record shows that the trial judge made a personal inspection of the territory in question. In an equity case the decision of the trial judge is entitled to weight, but where he examines the locus in quo, his findings and decree are entitled to more consideration.

As the case is tried *de novo* on appeal, we must look to the facts to determine whether or not the evidence supports the decision of the trial court. Plaintiff called to the witness stand seven witnesses as against one for the defendants. As space and time will not permit an analysis of the evidence of each witness, we will summarize the same. In order to follow our sum-

marization, we are inserting below a copy of an exhibit in the case, an aerial view of the property involved, with surrounding territory, taken from an airplane at an elevation of some 3,000 feet. The single heavy lines enclose the city of Estacada; the jagged lines enclose the whole of the annexed property; the parallel lines enclose plaintiff's property.

The whole annexed area may be likened unto a "dumbell" in shape, one end being adjacent to the city and the other embracing plaintiff's dam and power-house. The two ends of the "dumbell" are separated by a strip of land in varying widths, the narrowest point, hereinafter referred to as the "bottleneck", being less than 300 feet, exclusive of the river which flows along the westerly side of the annexed property. South of the "bottleneck" and adjacent to the city proper is where all the persons reside inside of the annexed territory other than two families, one of which resides within the territory between the "bottleneck" and plaintiff's property (circled on the map) and the other at the extreme northeast corner of the property sought to be annexed. Plaintiff's property, comprising 60 acres, is practically one-and-one-half miles, by round-about road, from the city boundary proper. There is no direct connecting means of access to plaintiff's property, aside from that on foot through the woods, and then one must traverse a deep gully separating the city from plaintiff's property.

Estacada comprises 222 acres with a population of 795 people and snuggles in the foothills of the Cascade range. The city consists of 1,038 lots, of which only 314 are improved, and 34.6 acres of unplatted property, none of which is occupied.

It is interesting to note that directly north of the city proper, but not included in the annexation, there are numerous homes situate on level land. The area north of the "bottleneck" is wooded land, and there is no habitation whatsoever within the boundaries of plaintiff's property.

There are in evidence aerial photographs which give a very comprehensive view of the entire situation. From these photographs and from the other evidence,

it is discernible that Estacada has nothing to offer in the way of city benefits to plaintiff's property, and plaintiff's property has nothing to offer to the city other than the revenues derived from taxation. Plaintiff's electric plant at the river mill dam does not even service Estacada; it receives its power and light from other sources. The total assessed valuation of Estacada is $362,830, while the assessed valuation of plaintiff's property is $708,000, almost twice as much.

Nearly all of plaintiff's arguments are directed to the legal propositions involved, and very little is offered to the reasonableness of the annexation proceedings. The city's sole argument for the reasonableness of the annexation is that the city has increased in population by 269 persons within ten years; that, "The area annexed is flat, suitable for home building, and borders a beautiful lake recreation area. There are already homes there, and with the extension of water mains, improvements of roads, and furnishing of street lighting, all contemplated and in part commenced, there can be little doubt the area will build more rapidly."; and that, "The problem of policing the annexed area could be greatly aggravated by the removal of respondent's land from the city."

As to the increase in population, as hereinbefore pointed out, there is plenty of room to expand within the unoccupied portions of the city proper, and so far as the homes already being there is concerned, as hereinbefore indicated, they were located south of the "bottleneck" and adjoining the city itself. Concerning the policing of the area, it is interesting to note that the city's witness, Mayor A. G. Ames, when queried about how many policemen the city had, replied, "One good one.", so that the policing problem appears to be *de minimis*. The above reasons advanced by the

city as to the reasonableness of the annexation are untenable.

No exact yardstick can be laid down as to what is reasonable and what is not. A sound formula is laid down in *Vestal v. City of Little Rock,* supra, at p. 892, as follows:

"That city limits may reasonably and properly be extended so as to take in contiguous lands (1) when they are platted and held for sale or use as town lots; (2) whether platted or not, if they are held to be brought on the market and sold as town property, when they reach a value corresponding with the views of the owner; (3) when they furnish the abode for a densely settled community, or represent the actual growth of the town beyond its legal boundary; (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas, or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation; and (5) when they are valuable by reason of their adaptibility [sic] for prospective town uses. But the mere fact that their value is enhanced by reason of their nearness to the corporation would not give ground for their annexation if it did not appear that such value was enhanced on account of their adaptibility to town use.

"We conclude further that city limits should not be so extended as to take in contiguous lands (1) when they are used only for purposes of agriculture or horticulture, and are valuable on account of such use; (2) when they are vacant, and do not derive special value from their adaptibility for city uses."

▮ We do not hold that the above is exclusive as facts may alter the situation since each case must depend upon its own facts. When we have a case, such as is presented by the record here, where it is obvious that the inclusion of plaintiff's property was unreasonable and

where the annexation was employed for the sole purpose of enhancing the revenues of the city in an amount practically twice that which the city now enjoys, the same is void.

■ The question arises as to whether we should declare the entire annexation proceedings void. The trial court held that the annexation of plaintiff's property to Estacada was void and enjoined the collection of taxes on it. It is our opinion that the whole proceedings are void for the reason that the people of both districts voted on a particular annexation, and, if the annexation is void as to any part of the property involved, it necessarily follows that the entire annexation falls. The decree will be modified with directions to the trial court to enter a decree declaring the entire annexation proceedings void.

## TOOZE J., SPECIALLY CONCURRING.

I concur in the result reached by Justice LATOURETTE, and also in most of his reasoning. However, I would go one step further and hold, without equivocation, that injunction is a proper remedy in this case, if not the most appropriate remedy. Being of that opinion, I feel that it is wholly unnecessary to adopt the theory that this is a proceeding for a declaratory judgment, with injunctive relief merely an incident. But I do not wish to be understood as questioning the propriety of a declaratory judgment proceeding as applied to the instant case.

At the outset, it might be stated that we all apparently seem to be in agreement upon the proposition that the attempted annexation in this case is void because of unreasonableness. The only real difference in opinion is a dispute as to the proper remedy available to test its illegality. Mr. Justice LUSK maintains that quo warranto in the name of the State is the ex-

clusive remedy, and that injunction at the suit of a private person will not lie. For the reasons' to be stated, I find myself unable to subscribe to the doctrine enunciated by my worthy associate.

It is the law that any person threatened with substantial injury by the enforcement of a void act of a municipal corporation has the right to protect himself by injunction. The exercise of this right is not dependent upon the consent of any other person, natural or artificial. If I correctly understand that which is said in the opinion of Justice Lusk, he clearly concedes that that is the law. However, as I understand his position, it is that the alleged illegality of the questioned act must appear upon the face of the record before injunction will lie at the suit of a private individual, and that it cannot be established *aliunde* the record.

With this position, as applied to the instant case, I do not agree. It is crystal clear from the reasoning of Justice Lusk, as well as from the authorities he relies upon in support thereof, that if, in annexing territory, a municipal corporation omits to follow some jurisdictional requirement, such as to hold a proper election, its action is void and subject to attack in an injunction suit.

I am sure that we are united in our opinion that, in the annexation statute involved here, there is, by implication, written therein a requirement that a municipal corporation taking advantage thereof must act reasonably. This requirement of reasonableness is just as important and jurisdictional as the requirement that the land sought to be annexed be contiguous, or that an election be held to determine the question in the manner outlined in the statute. It is obvious that there might be many cases in which the fact of contiguity would not appear upon the face of the record, and

where evidence would be required to establish the facts, whatever they might be. But the fact of noncontiguity, however established, would render the proceeding entirely void.

The contention of Justice Lusk that quo warranto is an exclusive remedy in a case of this kind is based upon the sole premise that we are here dealing with a *de facto* corporation. In such cases, he maintains, an injunction suit amounts to a collateral attack, and, under the law, that is not permissible. It would seem to follow, therefore, that if his original premise is wrong, his contention must fail. It is my opinion that his premise is erroneous.

It is the law that there cannot be a *de facto* corporation unless there should be possible a *de jure* corporation. 37 Am Jur, Municipal Corporations, 630, § 11; 62 CJS, Municipal Corporations, 106, § 30.

Webster defines "de facto" as follows:

"Actually; in fact; in reality;—distinguished from *de jure*. A de facto corporation, court, officer, or the like, must exist under a claim and color of right, *which requires that there should be possible a de jure corporation, court, officer, or the like.* * * *"* (Last italics ours.)

I am firmly of the opinion that under no circumstances whatever could the combined territory embraced within the corporate limits of the city of Estacada as heretofore established, and that sought to be annexed, become a *de jure* municipal corporation. There is no statutory or other authority which would authorize the creation of such a corporation. The vote taken was upon the whole of the proposed annexation, not upon separate parts thereof. It must, therefore, be considered as a whole. No court has the jurisdiction

to divide it into parts. It either is all good, or it is all bad. Being unreasonable and, hence, invalid, there exists no statute to give it any support. Insofar as the particular situation now before this court is concerned, the effect must necessarily be the same as though there existed no annexation statute whatever. Also, aside from the question of reasonableness, property to be added to a city must be subject to annexation. Plaintiff's property was not so subject.

Justice LUSK, in his opinion, makes the statement that "this is not want of jurisdiction, but the erroneous exercise of jurisdiction." I disagree. In my opinion, the defendant city wholly lacked jurisdiction to incorporate into its limits the tract of land it sought to annex. There is absolutely nothing the city can or could do to make this proposed annexation, considered as a whole, a reasonable exercise of its power. It is beside the issue that it might lawfully have annexed a part of this tract. That it did not do, nor attempt to do. This particular attempted annexation never did and never could have the breath of life. It died "a bornin' ". In direct opposition to what Justice LUSK states, the question here does not involve a mere defect in the exercise of power; it is a total want of power to do the thing the city attempted to do. The organization of a *de jure* corporation was impossible.

Had the annexation proceeding been merely voidable, instead of being wholly void, there is much in the opinion of Justice LUSK with which I could agree. But it occurs to me that, where an act is void, it is void for all purposes, and it should be immaterial how the fact of invalidity is established. Manifestly, there are many situations which might arise where the void character of a proceeding would not appear on the face of the record, and it would require evidence to establish the

fact; but that necessity does not render it less void. Is it logical to hold that a person threatened with immediate injury by the enforcement of such a void act is, nevertheless, deemed to be bound thereby until the state sees fit to move in setting it aside? That his hands are so tied that he cannot act directly to protect himself? To me, such a proposition does not make sense. Why shouldn't the real party in interest— he who is threatened with injury—have the right to move immediately in his own behalf? Is anyone hurt because invalidity is established by evidence? As is so aptly pointed out by Justice LATOURETTE, we sometimes concern ourselves overmuch with mere matters of form. If legal procedure is to successfully meet the challenge of an enlightened age, we should never sacrifice substance for mere form.

There is no disagreement among us upon the proposition that, if the proposed annexation is a nullity, injunction will lie. As indicated above, it is my opinion that it is an absolute nullity; the proposed new corporation never attained a *de facto* status.

The challenged annexation being void, plaintiff is entitled to its remedy by injunction.

## ROSSMAN, J., SPECIALLY CONCURRING.

I concur in the majority opinion, but add the following as additional explanation for my views.

The city's belated attack upon the sufficiency of the complaint as the statement of a cause of suit has provoked the only disparity of views which this court entertains about the case. The complaint was not challenged by motion or demurrer in the circuit court. In that court no contention was made, through objection to the evidence or in any other way, that the complaint did not state a cause of suit. No one there voiced a

claim that the state was a necessary party, or that the plaintiff had mistaken its remedy.

When the contentions now under consideration are reduced to their essence, they are: (1) Only the state can maintain a proceeding which challenges the validity of the annexation of territory to a city; and (2) quo warranto is the exclusive remedy in instances of this kind. In behalf of the suggestion that quo warranto is the exclusive remedy, the city argues that (a) the action taken by the voters on February 10, 1950, created a de facto annexation of territory, including the plaintiff's property, to the city of Estacada; and (b) this is a collateral attack upon the annexation proceedings. The city argues that a collateral attack cannot succeed and must be dismissed.

Let us now determine whether or not the complaint states a cause of suit. For that purpose an assumption will be made that the city has now filed a demurrer to the complaint and that it states as its bases the contentions mentioned above. In considering those matters, attention will, of course, be given to the inquiries as to (1) whether or not this is a collateral attack, and (2) whether or not injunction is the proper remedy. I will confine myself to the averments of the complaint and will not borrow from the evidence.

The complaint describes the plaintiff's property in terms of metes and bounds. The description begins as follows: "Beginning at the southwest corner of the Franklin Pierce D.L.C. No. 38 in T. 3 S., R. 4 E. of W.M., thence north on claim line to * * *." The terms in which the description is cast warrant a belief that the property has not been subdivided into lots and blocks. Since the description does not mention or allude to any line which forms a part of the city's boundary, apparently the plaintiff's property lies be-

yond the city limits and does not touch thereon. The following are other pertinent parts of the complaint:

"As to the hereinabove described real property owned by plaintiff, said attempted annexation and said purported new charter were and are void and of no effect in that:

"A. They were and are for the sole purpose of subjecting plaintiff's said property to taxation by defendant city.

"B. They were and are unreasonable extensions of defendant city's territorial limits.

"C. They burden plaintiff's said property with taxation by defendant city without benefit to plaintiff from defendant city and, therefore, constitute the taking of private property without just compensation, and without due process of law in violation of the Constitution of the United States and of the State of Oregon.

"D. Said real property owned by plaintiff was and it now is wholly unpopulated."

When a pleading is tested by a demurrer which has been timely filed, its averments are construed most strongly against the pleader *(Christopher v. McGuire,* 179 Or. 116, 169 P2d 879), but a different rule is employed when the demurrer is withheld until after a decree or judgment has been entered. Tardiness in attacking the pleading of one's opponent calls to the aid of the attacked pleading the doctrine of waiver, with the result that formal, technical and unsubstantial defects are deemed waived. When met with a postponed attack, a pleading is given a liberal construction and all reasonable intendments come to its avail: *Feehely v. Rogers,* 159 Or 361, 80 P2d 717, and *Cooper v. Hillsboro Garden Tracts,* 78 Or 74, 152 P. 488, Ann Cas 1917E 840.

For the reasons just given, we must assume that the city admits that the annexation was made "for

the sole purpose of subjecting plaintiff's said property to taxation by defendant city," and that the annexation burdens "plaintiff's said property with taxation by defendant city without benefit to plaintiff from said defendant city." In other words, this is a case in which the appellant city admits for the purposes of the demurrer that it annexed the plaintiff's property for the sole purpose of taxing it, and that the plaintiff will derive no benefits either from the annexation or from the tax which it will be compelled to pay.

It seems too clear to require the citation of authority that property can never be annexed for the sole purpose of taxing it, and that no tax is valid if the person who is required to pay it can never derive any benefit from the money taken from him.

Before going to the authorities, it is pertinent to take notice of the fact that annexation of territory to a city must be made for the good, not only of the city, but also of the land annexed. Each must be complementary to the other. The purpose of annexation must be, not only to create a unit as a matter of law, but also as a matter of fact. The annexed land with its homes, streets or other features must be capable of amalgamation into the city. The old boundaries and the annexed area must create a homogeneous whole. A city is a community; it is not a body of people upon the one hand and an area of land upon the other upon which no one lives and of which nothing is expected except the payment of taxes. In other words, the area annexed must not be a mere captive held for ransom or bounty purposes only. The opinion of Mr. Justice LATOURETTE contains an excerpt from *Vestal v. City of Little Rock*, 54 Ark 321, 15 SW 891, 16 SW 291, 11 LRA 778, which delineates the characteristics which land must possess to be suitable for annexation. The following, taken

from *Jones v. City of Clayton* (Mo App), 7 SW2d 1022, states the same features in a somewhat amplified manner:

" *   *   * However, the appellate courts in the disposition of cases of this character, have made some general observations which are highly pertinent to the matter at hand, to the effect that existing boundaries may properly be extended so as to take in contiguous lands: (1) When they are platted, and held for sale as town lots; (2) whether platted or not, if they are subject to be brought on the market, and sold as town property when they reach a value corresponding with the views of the owners; (3) when they furnish the abode for a densely settled community, or represent the actual growth of the municipality beyond its legal limits; (4) when they are needed for any proper town purposes, as for the extension of streets, sewer, gas, or water systems, or to supply places for the abode or business of its residents, or for the extension of needed police regulation; and (5) when their value is enhanced by reason of their adaptability for prospective town uses. This rule, however, has its converse, so that when it appears from the evidence that the contiguous lands are used chiefly for the purposes of agriculture or horticulture, and are valuable on account of such use, or when they are largely vacant, and do not derive any special value from their adaptability to city purposes, their incorporation within municipal limits will be regarded as unreasonable. State ex inf. v. Kansas City, 233 Mo. 162, 134 S. W. 1007; Stoltman v. City of Clayton, supra; Prairie Pipe Line Co. v. Village of Moscow Mills (Mo. App.), 300 S. W. 298; Winter v. City of Kirkwood (Mo. App.), 296 S. W. 232."

By reverting to the excerpt of the complaint which is copied in a previous paragraph of this opinion, it will be seen that the plaintiff's property possesses none of the needed attributes; in fact, as the defendant's demurrer admits, "said real property owned by

plaintiff was and it now is wholly unpopulated.'' It is unplatted property.

We have seen that the sole purpose of the annexation, as admitted by the demurrer, is to tax the property. Let us now go directly to that feature of the case. Annexations for tax purposes have frequently been condemned. The courts hold them void and subject to collateral attack. Very practical reasons support the holding; one is: when an owner of property is required to pay annually a tax without receiving any benefit whatever from the tax, not only is he deprived of his money in invitum, but his property is diminished in value. Thus he incurs a double loss and no gain.

The authorities speak in no uncertain terms against the course taken by the city. McQuillin, Municipal Corporations, 3d ed, § 7.21, says:

"* * * It is improper to annex to a city unneeded and unbenefited rural lands solely or principally for the purpose of deriving revenue therefrom by way of taxation, and it has been held that it is unconstitutional to do so. Those lands occupied by the proprietor exclusively in his business as a florist and farmer, to which no streets or other town improvements extend, and which the line of city settlements has not reached, and which is not laid off for city use, and would not be enhanced in value by annexation, but would be subjected thereby to taxation is not properly included in territory annexed to the city.''

Possibly the most glaring case in which the city lines were extended for tax purposes only is *McCarroll v. Arnold,* 199 Ark 1125, 137 SW2d 921. In that case, the plaintiffs were operators of gasoline filling stations in a place entitled Omaha, which purported to be an incorporated town. In 1935 Arkansas enacted a statute which provided that gasoline dealers in any town or city, the corporate limits of which extended to within

two miles of the state line, could sell gasoline at the rate of tax prescribed by law in the adjoining state. When that act was passed, Omaha was an unincorporated village which lay 3¼ miles south of the Missouri-Arkansas state line. Shortly after passage of the act, the village underwent the form of becoming incorporated into the town of Omaha with a territorial boundary a quarter of a mile wide and four miles long, terminating at the Missouri state line. At that time an Arkansas statute imposed a tax of 6½ cents per gallon upon all gasoline sold by service stations except, as already indicated, stations that were in towns within two miles of the state line. The plaintiffs, that is, the Omaha service station operators, brought the suit under review for the purpose of enjoining the defendant commissioner of revenue from collecting from them the state tax of 6½ cents per gallon. They, of course, depended upon the charter which had been granted to Omaha, and the fact that it lay within two miles of the Missouri-Arkansas line. The defendant admitted the circumstances which we have mentioned and, in explanation of his demand for payment of the tax, alleged that most of the land included in the incorporation order was unfit for town purposes and was not, in fact, needed for such purposes. He alleged that the sole reason for incorporating Omaha was to evade the provisions of the gasoline tax laws. At the trial, testimony offered by the defendant in support of his allegation was excluded. This testimony included facts tending to show that the strip of land, a quarter of a mile wide and four miles long, included agricultural, timber and bluff land impossible of traversal by wagon or automobile. The decision said:

"Appellees insisted on the trial below, and contend here, that appellant cannot make a collateral attack on the order of the Boone county court in-

corporating the town of Omaha and that the trial court was correct in so holding.

"On the contrary, appellant urges here that under the evidence offered by him before the chancellor he was entitled to attack collaterally the incorporation of the town of Omaha for the reason that said incorporation order is void ab initio; * * * ."

The court held that the defendant was "correct in both of these contentions." It then said:

"* * * The question, therefore, presented here is whether an unincorporated town can incorporate a strip of land four miles long and a quarter of a mile wide, running to the borderline of an adjoining state, which strip of land includes therein territory unsuited for municipal purposes, agricultural land not needed or adapted for city uses, to which no streets or other municipal improvements extend, which is uninhabited except for a few isolated farm houses, and thus avoid payment of the state tax on gasoline on the theory that the order of incorporation though void abinitio is not subject to collateral attack?"

The court reversed the decree of the lower court and remanded the case for disposition in accordance "with the principles of equity as outlined in this opinion." Those principles were stated by the court by quoting as follows from *Waldrop, Collector v. Kansas City Southern R. Co.*, 131 Ark 453, 199 SW 369:

"The order of the court organizing the proposed territory into an incorporated town was null and void, for the reason that the land was not of such character as could form an incorporated town. The record shows that the territory attempted to be formed into the town of Ogden ran parallel with the railroad track on both sides of it, and was 7 miles in length and about 5 miles in width. The railroad station of Ogden was situated on 80 acres of the

land and there were a few residences on these 80 acres. Most of the rest of the lands within the limits of the proposed town were timber lands, and the remainder were agricultural lands. There were four lakes upon the lands within the limits of the proposed town. It was manifest that the owners of the lands could not derive any benefits whatever from the lands being placed within the limits of an incorporated town. * * *

"The attempted organization of the proposed territory into an incorporated town was palpably wrong, and was an arbitrary and unreasonable exercise of power. Under the circumstances as they appear from the record, it is evident that the property of the railroad company is subject to the local burden of taxation solely for the benefit of others, and we think this is a case of taking private property for public use under the form of taxation without giving any protection or other compensation therefor. The attempted organization of the town of Ogden was therefore within the prohibition of our Constitution and was absolutely void. Vestal v. Little Rock, 54 Ark. 321, 329, 15 S. W. 891, 16 S. W. 291, 11 L.R.A. 778; City of Covington v. Southgate, 15 B. Monroe (Ky.) 491, and Morford v. Unger, 8 Iowa 82."

That is a clear holding that something more than a charter, a few people and wild land are required to make a valid municipality. It is also a clear holding that when an essential element to valid incorporation is lacking, no municipality is created and, therefore, a collateral attack will be entertained. In short, no rights can arise out of an unlawful act, and such an act cannot be set up as a shield by anyone in any kind of case.

*Witham v. City of Lincoln,* 125 Neb 366, 250 NW 247, was a suit in equity by the owner of a tract of land which had been annexed by the city of Lincoln seeking to have the annexation declared unlawful. The court described the property annexed as "a narrow strip of

plaintiff's land, reaching out like a finger, along the exact location of an 8-inch water-main required to be constructed to the Veterans' Hospital.'' According to the decision, the city insisted that the annexation was ''of tremendous importance to the City of Lincoln, and that an adverse decision will in a measure hamper the continued growth and prosperity of this fine city.'' The city argued: ''That plaintiff cannot collaterally and indirectly attack the validity of ordinance No. 3661, annexing the said property, but that only the state of Nebraska can question the same, and that plaintiff has an adequate remedy at law; * * *.'' The attacked annexation was made pursuant to a provision of the city's Home Rule Charter. In affirming the decree in favor of the plaintiff, the court declared:

> ''The trial judge made a personal inspection of the premises, and in his decree held that the plaintiff's real estate had been used for many years as farm land, and for no other purpose; that no part of the land had ever been platted into lots or blocks, and that it is in no wise urban property, but is solely agricultural land, which will not at the present time be benefited by being annexed to the city; that the object of the defendant city in passing said ordinance and annexing said lands, or attempting to do so, was to raise revenue, * * *.''

The decision quoted from *Bradshaw v. City of Omaha,* 1 Neb 16, in which the court, in reaching a similar result, declared:

> ''Can a legislature authorize a city to tax for its support, lands not reasonably to be considered city property?''

The decision [Witham v. City of Lincoln] said:

> ''This court has held that a municipality cannot annex property for revenue purposes, as appears to have been done in the case at bar. Joerger v.

Bethany Heights, 97 Neb. 675; Village of Osmond v. Smathers, 62 Neb. 509. * * * "* * * We are constrained to hold that the city exceeded its power when it annexed a narrow strip of plaintiff's land, reaching out like a finger, along the exact location of an 8-inch water-main required to be constructed to the Veterans' Hospital, and that such annexation of such farm land was wrongful and without authority, and that said land shall be considered as outside of the boundaries of the city, and that the taxes levied for the construction of such water-main are declared invalid, and the decree of the district court is affirmed."

In *Hustead v. Village of Phillips,* 131 Neb 303, 267 NW 919, the court said:

"Further, a municipality may not annex, or retain within its boundaries, strictly farm land for revenue purposes only."

*State v. City of Avon Park,* 108 Fla 641, 149 So 409, was a quo warranto proceeding instituted by the owners of unoccupied and unimproved lands, who sought an adjudication against the inclusion of their properties in the city. The following is from the decision:

"* * * Certainly, when the present Constitution was adopted, permitting special legislation for the incorporation of municipalities, it was not the intent of the organic or statutory law of the state, or the practice thereunder, that there should be included in a municipality relatively large areas of wild or unoccupied lands wholly unsuited for and not desirable or needed for municipal purposes, with no reasonable hope of municipal expansion to cover any considerable portion of the unoccupied or unimproved land included in or added to the municipality. The inclusion of large areas of rural lands in a municipality solely or largely for the purpose of municipal taxation, when such areas cannot reasonably receive any substantial benefit whatever from the municipality, and the rural

lands so included are not actually or potentially useful to the municipality except for taxation, is not within the intent of the legislative power stated in section 8, article 8 of the Constitution. Such an inclusion of large areas of lands not actually or potentially useful for municipal purposes except for taxation without any corresponding benefit, whether the incorporation is by special or local laws under section 8, article 8, or under general laws for the incorporation of municipalities, enacted pursuant to section 24 of article 3 of the Constitution, is an exercise of governmental authority not contemplated or permitted by the Constitution, and is a violation of the organic rights of the owners of such property to protection from the taking of their property by taxation without any compensation whatever to the owners who, or whose property so included, can receive no benefit governmental or otherwise from the municipality in return for such taxation. See State ex rel. v. Eidson, 76 Tex. 302, 13 S. W. 263, 7 L. R. A. 733; 43 C. J. 115. In this case the population is very small and the area of wild land incorporated in the town is relatively great.''

The court denied relief solely because ''an ouster as to such lands alone is not on this record a proper function of a quo warranto judgment.''

*Paducah-Illinois R. Co. v. Graham,* 46 Fed 2d 806, was a suit by a taxpayer against the sheriff and the board of education of a school district in which the plaintiff sought an injunction restraining the collection of a tax. It appeared that in the consolidation of some Kentucky school districts the boundaries were so extended as to include the adjacent bed of the Ohio river to the low-water mark on the opposite, that is, the Illinois, shore. Obviously, no children lived upon the submerged river bottom. In expressing its holding

that the plaintiff was entitled to an injunction, the decision said:

"* * * If the inclusion of the plaintiff's railroad bridge in the taxing district is so unnatural and so unreasonable as clearly to show that the sole purpose of the inclusion was to add to the taxable value of the property in the district, such inclusion would amount to spoliation and the taking of plaintiff's property without due process of law. The primary idea in the consolidation of school districts is to furnish a more efficient system of common schools to the people in the district. There could be no valid purpose in creating a consolidated district where there were no pupils to be served. At the time this district was created, of course, no person lived within that part of the boundary covered by the Ohio river when at ordinary low-water mark, and unless the river changes its course there never will be any school children within that particular territory. So, in placing that particular territory within the district, there could have been no purpose to serve any of the school patrons. * * * The result either way, as a practical matter, simply brings the bridge into the district for taxation purposes. Such inevitably is the sole result of including the river within the district, and legislative bodies, as well as individuals, must be presumed to have intended the necessary and inevitable result of their action.

"* * * * *

"As heretofore indicated, however, I am satisfied from this record that the sole purpose of the board in including in the district any part of the river north of low-water mark on the Kentucky side was to subject plaintiff's bridge to taxation, and that such taxation will be the only end attained by such inclusion, if allowed to stand. Such being the case, it necessarily follows that this action of the board was arbitrary and unreasonable, and violates plaintiff's federal constitutional rights."

*City of Russell v. Ironton-Russell Bridge Co.*, 249 Ky 307, 60 SW2d 628, is another instance in which a municipal body sought to extend its boundaries and by that means tax a bridge. The latter spanned the Ohio river from Russell on the Kentucky side to Ironton on the Ohio side. A part of the bridge was in Russell, and the latter collected an annual city tax of $984 from that portion. By extending the municipal limits further into the stream, the city sought to bring within its jurisdiction more of the bridge for tax levying purposes. In ruling against the city, the court said:

" * * * For obvious reasons there can never be in the territory proposed to be annexed any house erected, no street, sidewalk, or sewer can ever be constructed, no child will ever live in this district that can enjoy the school facilities of the city, and all the city can offer the Bridge Co. in return for the tax burden it may impose upon it will be the following advantages which the city claims the Bridge Co. will get:"

At that point the court considered the city's contention that it gave to the bridge fire and police protection. It held that the amount of such services which the bridge received was negligible. It concluded:

"How can property in a proposed addition be injured by including it within a city is a pertinent question, and the answer is that if the property in the proposed addition is not adapted and gives no promise of desirability for use as sites for residences, factories, mercantile buildings, warehouses, or other city uses, and certainly this is not so now, and can never be so, then its inclusion within the city and its subjection to the power of the city, to impose upon it city taxes would be an injury to it, and as common sense would tell us, that its subjection to such taxes would reduce the market value of property so included, then certainly such inclusion

would be a material injury to it. All of these things exist here, hence we hold that in view of the inconsiderable, if any advantages that could result to the city by the inclusion of this property in it, and the glaringly inadequate, if any, compensating advantages that could result to this property by the inclusion of it, that its inclusion and the subjection of it to city taxation would be a material injury to it, and hence the right of the city to make this proposed extension of its boundaries is denied.''

In *Barbe v. City of Lake Charles,* 216 La 871, 45 So2d 62, the court, in reaching its conclusion, said:

"* * * With reference to annexation, what is reasonable or unreasonable depends largely upon the particular facts in any given situation, such as that the property is needed for the future growth of the city and for police, fire or sanitary protection. It should never be permitted when made solely for the purpose of taxation or increasing the revenues of the city by this means.''

*Forbes v. Meridian,* 86 Miss 243, 38 So 676, declared:

"* * * Municipalities are not devised for the purpose solely, nor chiefly, of raising revenue. The power of extending corporate limits is granted not to be resorted to for the purpose alone of increasing the income of the municipality, but in order that the benefits incident to civic government may be extended to those resident in the territory adjacent to the municipality and included in the extension; * * *''

The following is taken from one of the headnotes in *State ex rel. Bibb v. City of Reno,* 64 Nev 127, 178 P2d 366 (quo warranto):

"Complaint alleging annexation by city of Reno of agricultural land to the financial loss of the owners and over owners' protest and that the city only needed to annex the lands for tax revenue,

stated cause of action to prohibit the annexation as being arbitrary and in violation of due process."

The following is copied from the words of the court:

"* * * Thus, in State ex rel. Walker v. Gladewater, Tex. Civ.App., 139 S.W.2d 283, 286, the court held:

" 'To subject the properties of a people to the burden of a municipal government which will share none of its benefits is unjust, State v. Eidson, supra [76 Tex. 302, 13 S.W. 263, 7 L.R.A. 733], and would result in the imposition of unnecessary burdens and the infliction of great injuries. * * * And as stated in State v. Masterson, [Tex.Civ.App.], 228 S.W. [623], 631, "to permit the incorporation (of relators' lands) in this case to stand, as was attempted, would be for us to sanction that which is clearly a legal fraud." Such attempted act was arbitrary, unreasonable, and violative of the inhibitions of both State and Federal Constitutions, * * * that "a person shall not be deprived of his * * * property without due process of law." '

"A recent case is Nolting v. City of Overland, Mo.Sup., 192 S.W.2d 863. The court held that farm land not platted or offered for sale as town lots and not needed for municipal purposes, could not be annexed. The court cited a number of cases. The cases all hold that on fact very similar to the annexation attempted by Reno, annexation is denied.

"In City of Pine Bluff v. Mead, 177 Ark. 800, 7 S.W.2d 988, the court denied annexation and used language which applies to the Reno situation as follows:

" 'There is much vacant property in the present city limits; that much of that attempted to be taken in is unplatted and vacant.'

"Likewise, the language used by the Indiana court in North Judson v. Chicago & E. R. Co., 72 Ind.App. 550, 126 N.E. 323, 326, is appropriate.

Annexation of farm lands was denied. The court said:

"'* * * with the surplus of lots, tracts, and farm lands within the present boundaries of the town, the territory which it is proposed to annex is not necessary.'"

*Missouri Zinc Fields Co. v. Webb City* (Mo App), 242 SW 1008, was a suit in equity to enjoin the defendant city from assessing and levying municipal taxes on three 40-acre tracts of land which belonged to the plaintiff and which a vote of the people had attempted to annex to the city. The tracts were used for mining lead and zinc. Previous attempts by the city to annex the tracts had been held by the lower Missouri courts unreasonable and, therefore, invalid. The decision said:

"* * * There is no showing that the procedures concerning elections, passing of ordinances, etc., were not at all times in accordance with the law relative to such matters, and it is apparent that the decisions of the trial court from time to time were based solely on the ground that plaintiff's land was unfit for city purposes, and ordinances taking it within the city limits were held to be unreasonable."

In holding the annexation unlawful, the decision ruled:

"To our minds the evidence fails to show that there is any reasonable ground to include plaintiff's land within the city limits other than to collect city revenue, and further fails to show that any material advantage, other than the collection of taxes, would accrue to either the city or the plaintiff by including such land in the corporate limits of said city."

The court remanded the cause to the trial court "with directions to render a judgment restraining and enjoin-

ing the defendant from levying or assessing municipal taxes against the said lands."

*Morford v. Unger*, 8 Iowa 82, was an action of replevin to recover possession of some personal property which the defendant, as marshal of the city of Muscatine, had seized under a warrant affixed to the city's tax list. An act of the legislature which expanded the limits of Muscatine had brought the plaintiff's farm into the expanded city boundaries. After the annexation, the plaintiff's land was taxed by the city $1.00 per acre. He refused to pay the tax and, after his property had been destrained, the action under review was brought. In reversing a judgment which had been entered for the defendant, the decision said:

> "The question to be considered in this case is, whether the act of the legislature of Iowa, approved July 14, 1856, entitled 'An act to amend the act to incorporate the city of Muscatine' is constitutional."

Addressing itself specifically to the city taxes which had been levied upon the plaintiff's farm land, and from which the court found he could derive no possible benefit, the decision said:

> "If there be such a flagrant and palpable departure from equity, in the burden imposed; if it be imposed for the benefit of others, or for purposes in which those objecting have no interest, and are, therefore, not bound to contribute, it is no matter in what form the power is exercised—whether in the unequal levy of the tax, or in the regulation of the boundaries of the local government, which results in subjecting the party unjustly to local taxes, it must be regarded as coming within the prohibition of the constitution designed to protect private rights against aggression, however made, and

whether under the color of recognized power or not.

"* * * * * *

"The extension of the limits of a city or town, so as to include its actual enlargement, as manifested by houses and population, is to be deemed a legitimate exercise of legislative power. An indefinite or unreasonable extension, so as to embrace lands and farms at a distance from the local government, does not rest upon the same authority. And although it may be a delicate, as well as a difficult, duty for the judiciary to interpose, we have no doubt but strictly there are limits beyond which the legislative discretion cannot go. It is not every case of injustice or oppression which may be reached; and it is not every case which will authorize a judicial tribunal to inquire into the minute operation of laws imposing taxes, or defining the boundaries of local jurisdictions. The extension of the limits of the local authority, may in some cases be greater than is necessary to include the adjacent population, or territory laid out into city lots, without a case being presented, in which the courts would be called upon to apply a nice or exact scrutiny as to its practical operation. It must be a case of flagrant injustice and palpable wrong, amounting to the taking of private property, without such compensation in return as the taxpayer is at liberty to consider a fair equivalent for the tax.

"* * * * * *

"* * * His land is situated too far from the city of Muscatine, to be deemed, in any just sense, a part of it. He does not desire to lay it off into city lots, but desires to use it as farming land. It is idle to say that the protection afforded by the city authority, or the privilege of voting at the city elections, furnishes a just equivalent for the burdens imposed upon him in the shape of taxes, by the city; and the attempt to extend its jurisdiction over

him and his property, must be regarded as an attempt to take private property for public use, and within the prohibitory clause of the constitution.''

The annexation was deemed invalid.

The following is taken from *Deiman v. The City of Fort Madison,* 30 Iowa 542:

''In the case before us the plaintiffs' lands are used *exclusively for agricultural purposes;* they have not been benefited by the current expenditures of the city; no money has ever been expended by the city for improvements on any of said lands; no street or alley has ever been opened or worked except Fifth street, which unites with and is the 'Fort Madison and Franklin road' on the south of these lands; * * * the lands are not needed for buildings, streets or any other city purposes; some of the out-lots of the city proper are uninclosed, and others are used exclusively for agricultural purposes, showing that not all of the territory within the city proper is needed for any city purpose, and that the lands of plaintiffs are sought to be brought within the jurisdiction of the city solely for the purpose of increasing its revenue, thereby taxing these lands for the benefit of others owning property in the city. The lands of the plaintiffs have not been enhanced in value since they have been within the corporate limits.''

The court, through resort to one of its earlier decisions, said:

'' '* * * while the enlargement of the boundaries of a municipal corporation, whereby the property of individuals is brought within the corporate limits, without their consent, and thereby subjected to municipal taxation, may not be an infringement of the constitution by taking private property for public use, it may so operate when such extension is unreasonable, and *embraces lands and territory not needed for buildings and population,* but which is taxed for the benefit of the territory which is

thus needed and occupied,' and that 'the court will interfere to restrain municipal taxation, where practicable, in cases in which it is shown that *the proprietor of the property* taxed cannot be benefited in a municipal point of view.' "

Going on, the court ruled:

"'* * * Upon the principles settled in the cases referred to, we are clear that the appellees' lands are not liable to the burden of municipal taxation, and the decree of the district court is therefore affirmed."

The decision affirmed the decree of the trial court, which awarded the plaintiff an injunction.

*Territory of Utah v. Daniels* (Utah), 5 LRA 444, arose out of a judgment which found the defendant guilty of violating a statute which required a listing of one's property with the county assessor. The legislature had extended the boundaries of Moroni City to such an extent that it included some farm property owned by the defendant. In reversing the judgment of guilty, the decision held:

"'* * * If the taxpayer and his property are so situated with respect to the government that it is palpable and clear that the use to which taxes collected are applied will not benefit him, then there is not compensation to support the tax.

"'* * * Inasmuch as it appears from the record in the case that the defendant resides and that his lands are situated outside of Moroni City, as indicated by public or private improvements, and beyond such contiguous or adjacent district as will be benefited by its municipal expenditure, the court holds that the Territorial Legislature had no power to subject his property to the burden of taxation for the corporate purposes of the city."

The facts in *Town of Parkland v. Gains*, 88 Ky 562, 11 SW 649, are sufficiently indicated in the following excerpt taken from the decision:

"* * * There is no city population near the land of the appellee Gains, nor necessity for taxing him to build these streets, or any reason for extending the municipal government over his land, except to tax him. He cannot and does not have the advantages or benefits that the citizens of the town proper enjoy from their local government, and the attempt to exercise the taxing power in this case, if carried out, would be taxing his private property for public use without first making constitutional compensation."

In explanation of that holding, the court added:

"* * * The ordinance was approved by a majority vote, and, as the property within the entire territory was by an express provision of the act made liable for the payment of these bonds, Gains, who owned the agricultural land included in the last addition of territory to the town, insisting that his land could not be taxed for municipal purposes, obtained an injunction against the collection of the tax, and Brown, the other appellee, obtained his injunction on the ground that, as all the agricultural land was exempt from taxation for the purposes contemplated, the actual town of Parkland should not be compelled to bear the whole burden, as such could not have been the legislative intent."

In all of the foregoing cases the annexation was held unlawful. In all of the cases, with the exception of *McCarroll v. Arnold*, supra, the sole purpose of the attempted annexation was to enable the annexing city to gain tax revenue from the annexed property. In the McCarroll case, the purpose was to escape a tax.

Annexation for tax purposes is by no means the only unlawful kind of annexation which has been de-

creed as void by the courts. A city, as we have seen, is a community of people and, therefore, annexations which do not serve in any way that fundamental purpose are not sustained by the courts.

*Jones v. City of Clayton,* supra, is one of many instances which can be cited in which a city, in extending its boundary lines, embraced land devoted solely to agricultural purposes. The attempted annexation met with the condemnation of the court. See, also, *Jones v. City of Ferguson* (Mo), 164 SW2d 112.

In *Clark v. Holt,* 218 Ark 504, 237 SW2d 483, a municipality, by resort to a strip of land 50 feet wide and 3060 feet long, sought to reach out and annex to itself a community which lay at the other end of the strip. The court said:

> "For all practical purposes, a half-mile gap will divide the old town from the proposed addition and the essential contiguity is lacking."

It found lacking the "oneness" essential to a community.

*City of Sugar Creek, Mo. v. Standard Oil Co.,* 163 Fed 2d 320, was an action by the Standard Oil Company against the city to have declared invalid and to enjoin an annexation of lands made by the city, including an industrial site acquired by the Oil Company in 1944. The city of Sugar Creek was incorporated in 1920. Its population since that time had been virtually static. The municipal area was 534 acres, including 200 acres upon which stood the refinery of the Oil Company. Of the 334 remaining acres only 36 per cent was ever used. In 1944 the Oil Company purchased 90 acres outside the city limits and announced a purpose of building upon it an additional plant at a cost of several million dollars. When the aldermen became

apprised of the Oil Company's purpose, they speedily adopted an ordinance expanding the city limits so as to include the newly purchased site. In their haste, the aldermen unwittingly included in the annexed area far more land than they had intended, and thus added to the city some railroad right of way, a water plant and other properties. The court determined the validity of the challenged annexation exclusively upon the basis as to whether or not the city's action was reasonable. It declared:

"* * * The courts, however, will not undertake to substitute their judgment for that of the city council and the electorate, and they will therefore not declare an annexation invalid unless the evidence is convincing that reasonable men would have to agree, from the nature, scope, object, need and results of the annexation, that the action was unreasonable and ought not to have been taken."

After considering every reason that was suggested in justification of the attempted annexation, the court agreed with the trial judge that the annexation was invalid. It could conceive of no valid reason for the annexation, and affirmed the injunction which had been issued.

The above will suffice as a review of the authorities. Of all of the above cases, only *State ex rel. Bibb v. City of Reno* and *State v. Avon Park* were based upon actions of quo warranto. Those decisions were included in the above review because they, like the other decisions, held that annexation for the sole purpose of taxation is unlawful. That is the phase of the case of immediate interest.

No decisions which employ principles contrary to those which controlled the outcome of the above cases have come to my attention. The above decisions hold

that no property is subject to annexation by a nearby city unless the property possesses attributes or features which will enable it to become a homogeneous part of the city upon annexation. The city must present a need for more territory, and the property to be annexed must be suitable to the city's needs. If it is a farm when annexed and will remain a farm for an indefinite period after annexation, the proceedings which attempted to annex it to the city will be condemned as illegal. If the property is a riverbed where, of course, no child lives, its annexation by a school district clearly is void, even though the annexation will afford the school district opportunity to tax a valuable bridge which has its footings in the riverbed. The same is true when a similar attempt is made by a city which renders no service of any consequence to the bridge. In short, unity by fiat of the law does not suffice. There must be unity of interest and of service so that amalgamation between the city and the annexed area will occur as a matter of fact. The decisions, as well as common sense, render it clear that annexation for the sole purpose of taxation is unlawful.

As we have seen, the city concedes, for the purpose of determining the sufficiency of the complaint, that the sole object of the annexation was taxation. It admits that the plaintiff's land was wholly unpopulated. The complaint affords good reason for believing that the land is unplatted and non-contiguous to the city. No further analysis is required to show that under the authorities which have been reviewed, the attempted annexation was void.

Some of the decisions which are reviewed in the preceding paragraphs base their holdings of invalidity upon construction of the local annexation statute. Others hold that when the state delegates to the city

the power which belongs to the state to annex land, an implied condition of the delegation of the power is that it shall be exercised in a reasonable manner. Those decisions condemn annexations, such as the instant one, on the ground that it is arbitrary, unjust and unreasonable. Still others hold that an annexation which cannot possibly be of any benefit to the annexed land, and which was made solely for taxation purposes, is tantamount to a taking of the property without compensation.

In this specially concurring opinion there exists no need to make a selection among those theories. All three possess merit. I prefer the last two. I am satisfied that when Article XI, § 2, Oregon Constitution, conferred upon the local residents power to adopt and amend the charters of cities and towns, it was intended that no arbitrary action would be taken. A delegation of the state's power to the local residents to make annexations contemplates that something more is essential than (1) a greedy city, (2) a nearby valuable tract of land, and (3) a majority vote. I am, likewise, satisfied that annexation for the sole purpose of taxation is violative of Article I, § 18, and Article XI, § 3, Oregon Constitution.

An imperfect compliance with a statute which authorizes the organization of a corporation—municipal or otherwise—may result in the formation of a de facto, as distinguished from a de jure, corporation. But no rights are won when an act is performed in contravention to law. An unlawful act confers no rights and affords no one a defense. When local residents annex the property of another to their city for the unlawful—and sole—purpose of taxing it, their action is illegal. Every court, upon encountering it,

regardless of the form of the action, must hold it void. It cannot create a de facto corporation.

In declaring that annexation must bring some good to the annexed land, I have no thought that the annexation must confer upon the land a benefit which can be readily segregated and identified. The benefit may consist of the fact that the annexed land will receive the general services of the city. But in the instant case, the demurrer admits that no benefit, even of the kind just suggested, will be received by the annexed area.

The challenged annexation was not only unlawful, but also ultra vires to the powers of the city. I conclude that (1) the complaint states a good cause of suit; (2) the plaintiff was the proper party-plaintiff; (3) the state was not a necessary party; and (4) injunction was the right remedy.

Although I believe that a suit for an injunction was the right remedy, I agree with Justices LATOURETTE and TOOZE that a suit for a declaratory judgment would also have been proper.

The above disposes of the belated demurrer. It also develops sufficiently the principles of law which govern the controversy. The evidence which was presented in support of the complaint warranted the relief that was given. It showed sufficiently that the annexation was made for tax purposes.

An assertion has been made, but not by any party to the case, that laches precludes the grant of relief to the plaintiff and that it would have precluded relief even if an action of quo warranto had been filed. *Weatherly v. Hochfeld*, 133 Or 136, 286 P 588, holds that laches must be pleaded. Its exact words are: "Laches is not available as a defense for the reason, among others, that it was not pleaded." The answer

in the case before us says not one word about laches; in fact, it consists of nothing but admissions and denials; it contains no affirmative defense. Further, appellant's brief presents nothing concerning laches. The following, taken from the brief's Subject Index, gives a composite view of every contention upon which the city depends:

"Page

"Statement of Case    1

"First Proposition of Law—The complaint does not state facts sufficient to constitute a cause of suit.    4

Point No. I—A private party may not attack the fixing or extension of municipal limits or bounds.    4

Point No. II—The grounds for relief set forth in plaintiff's complaint are not for judicial determination.    11

Point No. III—Courts may not inquire into the motives of legislative bodies.    26

Point No. IV—Courts may not inquire into the wisdom and justice of legislation.    30

"Second Proposition of Law—The reasonable or unreasonable extension of city boundaries under the Oregon annexation statute is not a subject of judicial inquiry.    35

Point No. I—The basic principles of Home Rule in Oregon prevent a court from setting aside all or any portion of a municipal annexation upon any ground other than failure to comply with the provisions of the annexation statute.    36

Point No. II—The Oregon legislature has legislated fully and clearly on the subject of annexation and therefore it is not for the courts to insert a rule of reason into the statute.    41

"Third Proposition of Law—The Federal constitution is not violated in any way by a change in municipal boundaries nor is there a violation of due process through an increase in taxation resulting from a change in city boundaries.  48

"Fourth Proposition of Law—The court has no jurisdiction to set aside or declare void an annexation proceeding as to part only of the area annexed.  56

"Fifth Proposition—The inclusion of Respondent's property in the annexed area was not unreasonable.  58

"Conclusion.  63"

Thus, laches was not pleaded and is not included among the defenses upon which the city depends. But the point is seized upon that the city has rendered itself indebted for approximately $4,000 upon work which was done after the municipal annexing election. The record does not disclose the amount of the city's annual budget. However, since the plaintiff's property constitutes about two thirds of the appraised value of the city [original and annexed lands], presumably the plaintiff, if the annexation is declared lawful, will have to pay from this time on about two thirds of every year's city tax. Thus because the city annexed, for taxation purposes only, the plaintiff's property and hurriedly let a contract for $4,000, the plaintiff will forever have to pay two thirds of the taxes assessed by the municipality. No part of the $4,000 was spent upon the plaintiff's land.

According to the record, the annexation election was held February 10, 1950, and on May 18, 1950, the city amended its charter in an apparent effort to conform the latter to the results of the election. This

suit was filed May 4, 1950. Thereafter, the city waited for more than a month before it filed its answer consisting of nothing but admissions and denials. Surely, if a prompt decision of the contested annexation was material to the city, it would not have postponed the filing of its answer for more than a month. The cause was not tried until September 19, 1950. The decree was entered promptly—October 12, 1950. But the city waited until December 8, 1950, before it gave notice of appeal. Its brief was not filed in this court until March 28, 1951. In recounting those facts, I have no purpose whatever of censoring the able attorneys who represent the city, and mention them only for the purpose of indicating that the city has never manifested any indication whatever that a prompt decision of the rights of the parties was vital to it.

From the foregoing, it must be apparent that even if the answer permitted us to consider laches, we would not hold that the plaintiff was guilty of undue delay in protecting or asserting its rights. The truth of the matter is, the record does not indicate that the plaintiff ever received intimation that the city had let a contract for any work in the annexed area. I repeat, none of that work was performed upon the plaintiff's property. I believe that the plaintiff acted with due diligence in asserting its rights.

As I have said, the evidence warrants the relief that was given. I concur in the opinions written by Justices LATOURETTE and TOOZE. However, wherever their reasons and mine are not in harmony, I prefer the ones set out above. I concur expressly in the part of Justice LATOURETTE's opinion which delineates the relief that should be awarded by the decree.

WARNER, J., SPECIALLY CONCURRING.

I concur in the result. I also concur in the majority opinion insofar as it holds that the annexation proceeding is void as an unreasonable exercise of the legislative power vested in the city under the provisions of ch. 210, Oregon Laws 1949. The specially concurring opinion of Mr. Justice Rossman gives eloquent additional support to that conclusion.

In the instant matter, *Miles et al. v. Veatch et al.*, 189 Or 506, 220 P2d 511, 221 P2d 905, is apparent authority for the application which is made of it in the majority opinion. This case will, however, continue to embarrass us and again be so used and possibly abused in the future until re-examined and overruled on the point which occasions its employment in the majority opinion or until it is appropriately limited, as I think should be done.

The division in the court arises over the propriety of the procedure employed by plaintiff to produce its desired result. This, however, was waived in the lower court and is raised here for the first time and, for that reason, should not command the degree of importance here which those dissenting presently attach to it. If it had been first raised in the lower court, I would have been compelled to now follow the conclusions reached by the dissenting opinions.

Reluctant as I am, as a matter of personal policy and practice, to rest my support solely upon the result achieved by a majority opinion, I find in this instance a further condition which I believe justifies and excuses my part in thus concluding this litigation at this time.

The majority of the court, if not all, is united on the ultimate and all-important proposition that the attempted annexation is void as an unreasonable exercise of the powers conferred on the city of Estacada

by ch. 210, Oregon Laws 1949. It is this point of accord which, in my opinion, particularly warrants my qualified concurrence in this matter. As above stated, our differences are only with reference to procedural propriety. None of us will venture to gainsay that if the present appeal were dismissed on the controverted point of procedure alone and the same matter eventually returned to us in due course by quo warranto, we would not once again declare, as does the majority opinion, that the entire annexation proceeding is void. Here, a public question of no small importance is involved. Its early solution is important not only to plaintiff but to every other property owner within the extensive area annexed. It is also important to the city of Estacada for, pending a final determination of the issues raised, its municipal plans and operations in the new area must remain in a state of suspension and uncertainty. Nothing new can be brought back to this court if this case is now dismissed and later retried as a proceeding in quo warranto. If we would thereby compel the plaintiff to resort to quo warranto and return here again one or perhaps two years hence, it would only be to obtain the same judicial result which the majority opinion presently accords. More than two years have already elapsed since the annexation was first voted.

Under the circumstances here present, justice demands a prompt and final response concerning the legality or illegality of the instant annexation matter. It should not be delayed nor denied by a difference of opinion over what is the proper legal vehicle to convey the problem to the court. I, therefore, join with the majority of my associates in giving a present answer to the litigants now before us but without subscribing to their views on the propriety of plain-

tiff's form of remedy as the proper or most effective method to achieve that end in the future in matters of like kind.

LUSK, J., DISSENTING.

I am unable to concur in the opinion of the court for the reason that, as I view it, the law does not sanction a suit by a private party to question, under circumstances such as are present in this case, the validity of annexation of territory by a municipality.

The court has construed the complaint as one brought under the declaratory judgments statute. I disagree. Neither the counsel who drafted the complaint nor counsel for the defendant have ever suggested that this is the nature of the proceeding. In the court below counsel for plaintiff said in a brief: "This is a proceeding in equity." They say in their brief in this court: "Plaintiff brought suit in equity and prayed that the court restrain the city of Estacada from including plaintiff's dam and power plant within its boundaries for the purpose of taxation, decree the annexation of the dam and power plant void, and restrain the assessment and collection of city taxes thereon."

The only language of the complaint which has the slightest tendency to suggest a declaratory judgment proceeding is the following from the prayer: "decreeing that the said attempted annexation by defendant city and said annexation proceedings and said purported charter of defendant city called the Estacada Charter of 1950 are void as to the following described real property." Similar language may be found in practically every complaint brought to enjoin the enforcement of an alleged invalid or unconstitutional statute or ordinance, but it has not heretofore been

thought sufficient of itself to convert the proceeding from one under the injunction statute to one under the declaratory judgments act. It may be conceded that at first glance some justification for the court's view may be found in the case of *Miles v. Veatch,* 189 Or 506, 535, 220 P2d 511, 221 P2d 905, the decision on which the court relies. I am unwilling to extend the authority of that case. There is an element here present not found in *Miles v. Veatch.* The authority to bring a declaratory judgment proceeding attacking a municipal annexation is found in § 6-602, OCLA, which provides:

"Any person * * * whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Section 6-601, OCLA, provides:

" * * * In any proceeding which involves the validity of a municipal charter, ordinance or franchise, the municipality affected shall be made a party, and shall be entitled to be heard, *and if the constitution, statute, charter, ordinance or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."* (Italics added.)

In this case the complaint alleges that the attempted annexation and the new charter "constitute the taking of private property without just compensation, and without due process of law in violation of the Constitution of the United States and of the State of Oregon."

The attorney general was not served with a copy of the proceedings as the statute requires. Certainly, we are not warranted in assuming that counsel attempted to bring themselves within the declaratory judgments act and at the same time that they ignored one of its requirements. But, if we do treat the complaint as one for a declaratory judgment, then it is our duty to dismiss the suit for failure of the plaintiff to comply with this statutory requirement. *Johnston v. Board of Adjustment,* 15 NJ Misc 283, 190 A 782. The fact that the court holds the constitutional question to be without merit is, in my opinion, beside the point. While it is true that two courts have held that this provision is merely directory, most of the courts which have considered it have held that the failure to serve the attorney general was fatal. See Borchard, Declaratory Judgments 2d ed, 275, cases cited in note 2. At any rate, whether this is a mandatory requirement or not, the failure to observe it is certainly relevant on the question of the character of the proceeding. This is particularly true when the court must resort to a strained construction in order to convert what the parties thought was an injunction suit, pure and simple, into a declaratory judgment complaint. In *Miles v. Veatch,* it should be observed, the attorney general himself represented the defendants, and, of course, was served with all the papers in the case.

However, for reasons presently to be stated, this question is not, in my view, of major importance. Whether this be a suit in equity or one for a declaratory judgment, the fundamental objection, that only the state can question the annexation, remains the same.

The assessor and the sheriff have not appealed, and we are concerned only with the decree against the city.

I believe that the following propositions correctly state the law governing this controversy.

■ The validity of a *de facto* corporation cannot be collaterally attacked. *State ex rel. v. School District No. 23,* 179 Or 441, 461, 172 P2d 655; *Northern Pac. Ry. Co. v. J. Day Irr. Dist.,* 106 Or 140, 159, 211 P 781, and Oregon cases there cited; *Tyree v. Crystal Dist. Imp. Co.,* 64 Or 251, 126 P 605; *Bennett Trust Co. v. Sengstacken,* 58 Or 333, 113 P 863; *School District v. School District,* 34 Or 97, 55 P 98; 1 McQuillin, Municipal Corporations 3d ed 597, § 3.51; 62 CJS, Municipal Corporations, 177, § 66; 37 Am Jur, Municipal Corporations, 649, § 32; Annotation, 13 ALR2d 1282.

*School District v. School District,* supra, was a mandamus proceeding in which the defendant sought to raise the question of the legality of the creation or organization of the plaintiff school district. After stating the grounds upon which the defendant relied in support of such claim, the court, speaking through Mr. Justice ROBERT S. BEAN, said (34 Or 99):

"These objections are, in our opinion, not available to the defendant, because the law is well established that the corporate existence of a school district, or other public or governmental corporation, created and organized under color of law, and in the exercise of its corporate powers, cannot be attacked, except in a direct proceeding instituted by the state for that purpose [citing cases]. Such organizations are the mere creatures and agents of the state, clothed with certain governmental powers, and their existence cannot be called in question in a mere collateral proceeding; 'for,' as said by Mr. Justice CAMPBELL, in Clement v. Everest, 29 Mich. 20, 'it would be dangerous and wrong to permit the existence of municipalities to depend on the result of private litigation. Irregularities are common and unavoidable in the organization of

such bodies, and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons.' "

As to the distinction thus made between direct and collateral attack, this case is cited with approval in *State v. Evans*, 82 Or 46, 48, 160 P 140.

*Bennett Trust Co. v. Sengstacken,* supra, was a suit against the commissioners of a port to enjoin the issuance of bonds on a number of grounds, including the alleged invalidity of the statute authorizing the incorporation of ports and irregularities in the election. The court, after considering all the objections, said through Mr. Justice BURNETT:

"To reach the result desired by the plaintiffs the court is asked to override the exercise of a political power by a co-ordinate branch of the government in appointing these officers, and, having done so, to go still further and overturn in this collateral proceeding the order and proclamation of the county court of Coos County, a tribunal specially authorized to declare the result of an election which it confessedly had the power and authority to order, and, finally, to determine that the defendants had no title to the positions of commissioners of the port. We do not conceive that the equitable power of the court extends so far. If the plaintiffs would determine the title to the positions held by the defendants, recourse can be had to the remedy provided by Section 366, L.O.L. [8-804, OCLA, the quo warranto statute] * * *."

The doctrine of this case was reiterated in *Tyree v. Crystal Dist. Imp. Co.,* supra. The court, again speaking through Mr. Justice BURNETT, after a reference to the Bennett Trust Co. case, said:

"The principle was again established in the case of Splonskofsky v. Minto, lately decided by this

court and reported in 62 Or. 560 (126 Pac. 15). In that case plaintiff tried to restrain the sheriff from collecting taxes which had been levied by a high school district. This basis of the complaint was that there were some supposed defects in the organization of the district; but the court held that, unless challenged by direct proceedings, the acts of a *de facto* corporation cannot be attacked collaterally by injunction [citing cases]. The governing principle is that, as long as the State permits a *de facto* corporation to carry on business as such an institution, its validity cannot be assailed in a collateral proceeding instituted by a private person."

■ A suit by a private party to enjoin the collection of municipal taxes on the ground that the corporation was not lawfully organized is a collateral attack. *Northern Pac. Ry. Co. v. J. Day Irr. Dist.,* supra, 155-163; *Splonskofsky v. Minto,* 62 Or 560, 570, 126 P 15; *Bennett Trust Co. v. Sengstacken,* supra; *Tyree v. Crystal Dist. Imp. Co.,* supra; McQuillin, op cit., 599, § 3.52; *Coe v. City of Los Angeles,* 42 CalApp 479, 183 P 822; *Crowl v. Board of Trustees,* 109 CalApp 214, 292 P 985; *Sage v. City of Plattsmouth,* 48 Neb 558, 67 NW 455; *Kuhn v. Port Townsend,* 12 Wash 605, 41 P 923, 29 LRA 445, 50 Am St Rep 911; *Frace v. Tacoma,* 16 Wash 69, 47 P 219; *Gardner v. Benn,* 81 Kan 442, 105 P 435; *Smith v. City of Emporia,* 168 Kan 187, 211 P2d 101, 13 ALR2d 1272; *Saylor v. Town of Wallins,* 220 Ky 651, 295 SW 993; *Biggerstaff v. City of Altus,* 114 Okla 98, 243 P 751; Annotation, 13 ALR2d 1297. The cases from other jurisdictions all involved the validity of annexation proceedings, and in most of them a point of attack, as in this case, was that the plaintiff's lands were not benefited by the annexation and, therefore, were wrongfully included.

■ Annexation of territory to a city is *pro tanto* a new organization of the municipality, and the rule with respect to collateral attack applies equally to it as to the case of an original incorporation. *People ex rel. Quisenberry v. Ellis*, 253 Ill 369, 97 NE 697, Ann Cas 1913 A 589; *Skinner v. City of Phoenix*, 54 Ariz 316, 95 P2d 424; *Kuhn v. Port Townsend*, supra; *Smith v. City of Emporia*, supra; *Frace v. Tacoma*, supra; *Dixon v. City of Bremerton*, 25 Wash2d 508, 171 P2d 243; 2 McQuillin, op. cit. 374, § 7.41. The cases from other jurisdictions cited under (1) and (2) support the foregoing. Indeed, the numerous cases throughout the country which deny the right of collateral attack upon an annexation because it seeks to question the validity of a *de facto* corporation necessarily proceed upon this view. As the court said in *People ex rel. Quisenberry v. Ellis*, supra, "An indispensable element of a municipal corporation is territory, and an annexation of territory is to that extent a new organization of the municipality."

Again in *Smith v. City of Emporia*, supra, the court quoted from *Chaves v. Atchison*, 77 Kan 176, 93 P 624, as follows:

"* * * It is alleged, it is true, that the tract was not legally annexed, but there is undoubted jurisdiction in the mayor and council to make a legal annexation by the passage of an ordinance. An ordinance has been passed in fair form purporting to enlarge the boundaries of the city and making the addition in question a part of the city, and since that time the city has been exercising municipal authority over the addition and the people residing there.

"The validity of the corporate existence of the city as originally organized, or as reorganized by the extension of its boundaries, cannot be ques-

tioned by private parties. It has been held that the extension of corporate limits to include new territory, under statutory authority, is, in effect, a reorganization of the city; that the act of annexation involves the corporate integrity of the city, and is not open to collateral attack; and that its validity cannot be questioned by any party other than the state any more than can the validity of the original organization of the city. *Topeka v. Dwyer,* 70 Kan 244, 78 P 471, 3 Ann Cas 329. * * * We are therefore not warranted in considering whether the steps [taken to bring] the tract of land into the city were legal or not. The objections which the plaintiff makes can only be considered in a direct proceeding prosecuted at the instance of the state by the Attorney General or county attorney.''

The rule is thus stated in 62 CJS 174, § 65:

''Before completion of all steps for annexation of territory by a municipality, certiorari will lie at the instance of a citizen or taxpayer to secure annulment of irregular proceedings; but, after all steps for annexation have been taken and the municipality exercises dominion over the territory in at least a de facto capacity, certiorari is not the proper remedy, and the proceedings must then be tested by quo warranto.''

The foregoing rules are supported by what must be acknowledged to be the decided weight of authority. There are a few jurisdictions in which, as pointed out in the annotation in 13 ALR2d 1282 and 1289, there are opposing decisions. These take the position that a change of boundaries is on a lower plane than a corporate reorganization, or that the interest of a property owner, arising from threat of taxation, is sufficient to enable him to maintain the suit. In some states an appeal to the courts from an annexation judgment or ordinance is provided. See, e.g., *City of Russell v. Ironton-Russell Bridge Co.,* 249 Ky 307, 60 SW2d

628; *Barbe v. City of Lake Charles,* 216 La 871, 45 So2d 62; *Forbes v. City of Meridian,* 86 Miss 243, 38 So 676; *Incorporated Town of North Judson v. Chicago & E. R. Co.,* 72 Ind App 550, 126 NE 323. Cases arising under such statutes are, of course, not in point. Further, some courts have held that they have power to relieve from taxation lands included within a municipality, but receiving no benefits therefrom, without, however, disturbing the municipal boundaries. That is the rule in Florida. *City of Sarasota v. Skillin,* 130 Fla 724, 178 So 837 (with strong dissent). If, however, it is a liquor license tax and not a tax on lands which is involved, it is held that the question can only be determined by quo warranto proceedings brought in the name of the attorney general. *The Riviera Club v. The City of Ormond,* 147 Fla 401, 2 So2d 721.

Both on principle and on the authority of our own decisions I think the court should not follow the minority view. We held in *State ex rel. v. Port of Tillamook,* 62 Or 332, 124 P 637, Ann Cas 1914C 483, that an action in the nature of quo warranto, brought in the name of the state under § 8-804, OCLA, is a proper proceeding to test the validity of the reorganization of a port by changing its boundaries so as to embrace new territory. We said in effect in *State ex rel. v. School District No. 23,* supra, that the rule against collateral attack upon the legality of a *de facto* corporation applies to the consolidation of school districts. And we approved in *Northern Pac. Ry. Co. v. J. Day Irr. Dist.,* supra, the following statement of the law from 1 McQuillin, Municipal Corporations, § 151:

"A municipal corporation may exist *de facto.* * * The general doctrine has been thus broadly stated that a *de facto* corporation may legally perform every act which the same entity could perform,

were it a corporation *de jure.* Its existence and acts are valid against all the world, even against the state except in direct proceedings to arrest its usurpation of power. Hence, where a reputed corporation is acting under forms of law unchallenged by the state, the validity of its organization cannot be drawn in question by private parties, nor can its existence be collaterally attacked."

This rule was again recognized by this court in the recent case of *State ex rel. v. School District No. 23,* supra, which was a direct proceeding brought on behalf of the state to challenge the validity of consolidation of school districts. There the court, after stating that the defendant school district was "at least a *de facto* corporation" and that "A *de facto* municipal corporation, however, is not exempt from attack in *quo warranto* proceedings brought directly against it by the State or upon the relation of a private person," held that from the facts before the court it was "clear that the relator, and not the state, is the interested party," and that "The defendant school district, as a *de facto* corporation, can defend itself against any proceeding which he, as an individual, can maintain."

Where, however, the act of annexation is absolutely void, because not authorized by law or under color of law, it is subject to attack by anyone, whenever and wherever its validity is questioned. Illustrative of the exception are *Waco v. Higginson,* (Tex Civ App) 226 SW 1084, in which the annexation was attempted under a charter provision in conflict with the state law; *Barton v. Stuckey,* 121 Okla 226, 248 P 592, where the ordinance annexing territory showed on its face that it was passed without the consent or application of the owners as required by statute; and *People v. Hausen,* 276 Ill 204, 114 NE 596, in which annexation

was attempted pursuant to a charter provision which had been repealed by a general act. Other like cases are collected in the annotation in 13 ALR2d at page 1292. The rule is well stated by the United States District Court for the Western District of Oklahoma in *Inland Development Co. v. Oklahoma City,* Okla., 9 F Supp 96, as follows:

"* * * when sufficient facts exist to confer authority and jurisdiction on a municipality to annex territory, and there has been a substantial compliance with the provisions of the statute relating thereto, the validity of an ordinance annexing such territory cannot be attacked in a collateral proceeding by reason of defects, informalities, or irregularities in its passage."

With one possible exception, all the cases cited in the opinion of the court as authority for the propriety of an injunction suit to test the validity of annexation proceedings are typical examples of the exception to the rule against collateral attack, and none of them in any way conflicts with that rule when it is properly understood. *Thurber v. McMinnville,* 63 Or 410, 128 P 43; *Landess v. City of Cottage Grove,* 64 Or 155, 129 P 537; and *Couch v. Marvin,* 67 Or 341, 136 P 6, are cases in which the municipalities attempted to annex territory without giving to the voters in the annexed territory an opportunity to approve or reject the proposal, contrary to the law of this state. In the similar case of *Cooke v. Portland,* 69 Or 572, 139 P 1095, the reasons for holding the annexation void were summarized by Mr. Justice BURNETT at page 580 as follows:

"In brief, as against the plaintiff and others in like situation, the election was void because no notice of the same was given. On the part of the city it was void because the legal voters thereof

had no opportunity to express their wishes on the subject. As to both parties it was void because, worked out to its final analysis, it amounted to an amendment of the charter of the City of Portland by those living entirely without its boundaries.''

With respect to the failure to give notice the court said:

"* * * The opportunity to be heard, which in its very nature involves previous notice, is essentially jurisdictional in its character where it is proposed to take the property of an individual or to visit upon it additional burdens. Without this, the action of the city council was analogous to taking the property involved without due process of law.''

Finally, in *Spence v. Watson,* 182 Or 233, 186 P2d 785, collateral attack was permitted in a case where the city had failed to follow a mandatory provision of the statute requiring a petition from fifteen per cent of the resident owners of real property in the area sought to be annexed before an election could be called. The court held that without such a petition no jurisdiction was conferred on the city council to act.

Some other Oregon cases should be noticed. *Leach v. Port of Tillamook,* 62 Or 345, 124 P 642, was a companion case to *State ex rel. v. Port of Tillamook,* supra. It was a suit by taxpayers to enjoin the collection of taxes by the Port of Tillamook on the same ground as that urged in the quo warranto action brought by the state, namely, that the reorganization of the port by taking in additional territory was void because there was no statute authorizing it. For this reason the plaintiffs were held entitled to prevail. This case is a clear illustration of the exception to the rule against collateral attack.

In *Witham v. McNutt,* 186 Or 668, 208 P2d 459, taxpayers brought a suit to enjoin public officials from certifying an annexation to the city of Eugene. Under the statute such certificate was required before the annexation would be effected. Various defects in the proceedings were claimed, but we held that they did not invalidate the reorganization. No question of the plaintiff's right to sue was raised or discussed. However, it was clearly a case in which there was not even a *de facto* corporation, because the final essential step had not been taken, and the rule against collateral attack, therefore, was not applicable. See 74 CJS, Quo Warranto, 197, § 13; *City of Anaheim v. City of Fullerton,* 102 CalApp 395, 227 P2d 494.

In *McBee v. Town of Springfield,* 58 Or 459, 114 P 637, the claim made by the plaintiff, seeking to enjoin the collection of taxes, was that the law authorizing the annexation was void. This claim was not sustained, and an injunction was denied. Had the law been held invalid it would have been a proper case for collateral attack.

In *Day v. Salem,* 65 Or 114, 131 P 1028, Ann Cas 1915A 1011, a suit to enjoin collection of taxes, the grounds of objection were that part of the property annexed belonged to the state and that the votes cast in the territory to be annexed were cast by persons who were not residents. These objections were considered and held to be without merit. No question respecting the right of the plaintiff to maintain such a suit was raised in this case. And, even though the defects alleged, had they been established, were not such as to affect the jurisdiction of the municipality to carry out the annexation proceedings, the case cannot be regarded as a precedent sustaining the right of collateral attack.

So far as I have been able to ascertain, there is no Oregon case which, when the question was directly presented and passed upon, holds that collateral attack by a private suitor on the validity of a *de facto* municipal corporation is permissible. Such an attack has only been allowed when the proceeding was wholly void, either because taken without authority of law or because some requirement of law essential to jurisdiction was omitted. In cases of this sort there is not even a *de facto* corporation; and the annexation, where that is involved, is simply a nullity.

If, for the purpose of the argument, it be assumed that this is a proceeding under the declaratory judgments act the rule is no different. That act is a valuable procedural device whose use I would not unduly restrict by construction. But I think that it was not intended to, and did not, repeal the policy steadily adhered to in this state and exemplified by the decisions of this court herein cited, that only the state in a direct proceeding can inquire into the validity of a *de facto* corporation. No doubt, as Professor Borchard indicates in a passage quoted in the opinion of the court, the declaratory judgment has "the advantage of escaping some of the restriction of *quo warranto*." Borchard, Declaratory Judgments 2d ed 362. But, in my opinion, it cannot and should not be employed by a private suitor in any case where collateral attack by a private suitor in some other form of proceeding, such as injunction, would not be countenanced. This is because it is of the essence of the doctrine that, where collateral attack is prohibited, only the state may challenge the validity of the corporation.

This view is not without support in the decisions. *Skinner v. City of Phoenix,* supra, affords a striking illustration of the line of demarcation which must be

drawn. That was a declaratory judgment proceeding brought to determine the validity of an annexation. One ground of attack was that the statute under which the proceedings were taken was unconstitutional. As to this the court said: "If the statute is unconstitutional, all the proceedings taken thereunder are void for lack of jurisdiction." Therefore, it would determine that question. Another objection was that certain provisions of the statute had not been complied with. As to this the court held that it was a collateral attack, that only the state could raise the question by quo warranto, and that the declaratory judgments act had not changed the situation.

In *Birmingham Bar Ass'n v. Phillips & Marsh,* 239 Ala 650, 196 So 725, a declaratory judgment proceeding was brought to determine whether certain individuals and corporations engaged in the insurance business were unlawfully practicing law. An Alabama statute extended the use of an information in the nature of quo warranto to cases of intrusion into the legal profession. Referring to this statute the court said:

"Our statute has extended the right to institute such proceeding to a person giving security for costs of the action. But, in such case, the action is still prerogative in character, brought in the name of the State, on the relation of such person, who becomes a joint party with the State. The giving of security for the costs of the action is the condition upon which the relator is permitted to sue in the name of the State. Without such security, he usurps the authority of the State. Ex parte Talley, 238 Ala. 527, 192 So. 271."

The court further said:

"As indicated, it is the policy of the law of Alabama that such proceedings should be had in the name of the State, and instituted in the manner designated by statute.

"To sanction a private action inter partes with the same objective would operate a virtual repeal of the quo warranto statute.

"We need not elaborate upon the reasons behind the public policy of requiring such proceedings by or in the name of the State. It is easy to visualize that no good could come to the legal profession or to the insurance world by private litigation wherein one party charges the other with invading his exclusive field of service, and the other counters with a charge of an attempt to invade and oust him from his lawful field of private enterprise.

"The Declaratory Judgment Law was never intended to strike down the public policy involved. Hence, there is no occasion to rely upon our line of cases denying its application where other adequate remedy is available."

The question arose again in *Gwynne v. Board of Education,* 259 NY 191, 181 NE 353, a case involving the legality of a consolidation of school districts. The plaintiff brought a declaratory judgment action, and the court was called upon to discuss the question of whether the existence of the corporation was subject to collateral attack by an individual claiming to be aggrieved. It was held that the period of user had been too short to establish a *de facto* franchise, and the plaintiff's right to maintain the proceeding was sustained.

All three of these decisions are authority for the proposition that the rule against collateral attack is in no way modified where a declaratory judgment proceeding, instead of some other form of suit such as injunction, is resorted to as the means of attack.

Nor is this view in any way inconsistent with *School District No. 1 v. School District No. 45,* 148 Or 554, 570, 37 P2d 873, and *Tompkins v. District Boundary Board,* 180 Or 339, 344, 177 P2d 416. In the former

of these cases, the plaintiff school district attacked the validity of a consolidation with the defendant school district upon the ground that the only election held upon the question was in the latter district. The court held that this question could be determined in a declaratory judgment proceeding, and that the attempted consolidation was void. The omission to hold an election in one of the districts was said to be "a jurisdictional defect." 148 Or 573. In the Tompkins case a declaratory judgment proceeding was brought, and the right to bring it affirmed, to determine whether a statute permitting the withdrawal of a school district from a union high school district was unconstitutional. In both of these cases collateral attack by injunction would have been permissible, for in neither had *de facto* status been attained, in the one case because of a jurisdictional defect and in the other because, where the law under which a corporation is attempted to be formed is unconstitutional, there can be no *de facto* corporation. *Brown v. Webb,* 60 Or 526, 530, 120 P 387; *State v. Several Parcels of Land,* 78 Neb 703, 111 NW 601; 8 Fletcher, Cyc Corp perm ed, §§ 3790, 3791.

As to *Webb v. Clatsop Co. School Dist. 3,* 188 Or 324, 215 P2d 368, the other declaratory judgment case relied on by the court, it is sufficient to say that it does not appear in the record that the consolidated school district which the plaintiffs challenged had actually achieved *de facto* status—the consolidation election was held May 2, 1949, and the suit filed June 10, 1949—and in any event the question here debated was not raised or passed upon by the court.

In *State ex rel. v. School District No. 23,* supra, 179 Or 456, we said: "Municipal bodies organized in imperfect compliance with a statute under which they could have achieved a *de jure* status, but which exer-

cised in good faith the powers which they imperfectly secured, are recognized as *de facto* municipal corporations: McQuillin, Municipal Corporations, 2d ed., § 175, and 56 C.J., Schools and School Districts, p. 254, § 90." Under this definition the reorganized city of Estacada is at least a corporation *de facto*. As to user of the corporate powers, the evidence discloses that the city has spent some $4,000 on the construction of a water main in the annexed territory and improved the road leading through it, and that it planned to extend the road as far as the plaintiff's electric plant but discontinued the work when the suit was commenced.

We are not dealing here with a void annexation. What was done was done under a valid law, the council of the city had jurisdiction to submit the question to the voters (Ch 210, Oregon Laws 1949), and did submit it, and, so far as the issues in this case go, there are no defects or irregularities in the proceedings whatsoever. The only ground of complaint is that the council and the voters exercised their undoubted authority unreasonably by including in the annexed territory property which could derive no benefit from becoming a part of the municipality. This is not want of jurisdiction, but the erroneous exercise of jurisdiction. The attack here strikes "at the correctness or wisdom of a decision which the * * * [electorate] has made after jurisdiction is indubitably conferred." *State ex rel. v. Evans,* 82 Or 56. That kind of question, I think, cannot be collaterally raised in a suit to enjoin the collection of taxes.

The John Day Irrigation District case, supra; *State ex rel. v. Port of Tillamook,* supra; *State ex rel. v. School District No. 23,* supra; and *State v. Evans,* supra, are all authority for the right of a private party to maintain as relator, on behalf of the state, an action

in the nature of quo warranto directly brought to question the legality of a public corporation under § 8-804, OCLA. In such a case the relator is deemed a co-plaintiff with the state, § 8-806, OCLA; it is the duty of the prosecuting attorney to commence the action, and the private party must give satisfactory security to the state to indemnify it against the costs and expenses that may be incurred thereby, § 8-807, OCLA. See *State ex rel. v. School District No. 9*, 148 Or 273, 31 P2d 751, 36 P2d 179; *State ex rel. v. Cook*, 39 Or 377, 65 P 89; *State ex rel. v. Stevens*, 29 Or 464, 44 P 898. In my opinion, the remedy afforded by the statute is, in a case like this, exclusive.

For the foregoing reasons I dissent.

Mr. Justice HAY authorizes me to say that he concurs in the foregoing opinion.

BRAND, C. J., DISSENTING.

I dissent. I join in the opinion of Mr. Justice LUSK and shall not duplicate the able discussion of the authorities which appears in his opinion.

In the welter of authorities, pro and con, we are in danger of overlooking the reasons of public policy which underlie statutes and decisions relative to the methods by which the validity of annexations to cities may be tested. We will first consider what the plaintiff, being aggrieved by the proposed annexation, had a right to do in the protection of his interests. It is undisputed that the attempted annexation was undertaken pursuant to Chapter 210, Oregon Laws of 1949. Under that statute the city was required to give notice of the election for four successive weeks, both by publication and by posting. The plaintiff was therefore fully advised concerning the proposed annexation before the election, which was held on 10 February 1950. Under the same statute, the legislative body of the

city of Estacada was required to proclaim such annexation by a proper order or ordinance "which will create an official city record." The recorder of the city was then required to transmit a certified copy of such order to the Secretary of State. Under the statute, an annexation becomes complete only upon the filing of the required instruments with the Secretary of State. I think it is clear that the plaintiff might have brought a suit for injunction to restrain the recorder from filing with the Secretary of State the certification of the election. Although there may be a conflict of authority on the point, I think it is also clear that the plaintiff might have sought, by proper proceeding, a declaratory judgment prior to the filing with the Secretary of State. The remedy which was open to it at that time involved no collateral attack upon any de facto public corporation. Any rights which the plaintiff had could have been asserted and adjudicated in such a proceeding.

We will next consider the results which necessarily follow from the procedure actually adopted by the plaintiff. The undisputed evidence in this suit, which was brought as one for injunction, but which the majority considers to be for a declaratory judgment, shows that since the purported annexation, the city of Estacada has put in 2300 feet of new water main in the annexation area at a cost of over $4000, and has done "a lot of improvement work on the road down through this new annexed territory." The evidence also shows that further improvements were intended but were discontinued when the suit was filed by the plaintiff. The record also shows that following the purported annexation the city proceeded with an election for the adoption of a new charter for the city, as enlarged by the election of 10 February 1950. The legislative

charter of the city established no procedure for the adoption of a new charter by the voters nor was any such provision made in any charter amendment prior to the adoption of the Estacada charter of 1950 which was adopted by the voters of the city as enlarged by the annexation proceedings. We must assume that the new charter was enacted pursuant to the powers vested in every municipality as to "local, special and municipal legislation, of every character, in or for their respective municipalities * * *." Constitution of Oregon, Article IV, § 1a. The new charter is on file in the Supreme Court Library. It accomplished no annexation of territory. It merely purported to adopt an entirely new charter for the city, as enlarged by the previous annexation procedure. It is apparent that the preparation of the new charter following the annexation proceedings, its consideration by the city council, and the publication of required notices of election, must have consumed most of the time from the date of the annexation proceedings until the filing of plaintiff's suit herein. The suit was filed on 4 May 1950 and the charter amendment was adopted on 18 May 1950, after which the supplemental complaint herein was filed. The resolution proclaiming the adoption of the charter of 1950 shows that the votes cast in the entire area, including the annexed portion, were counted without segregation.

In the majority opinion it is suggested that the construction of water mains in the annexed area immediately following the annexation election was done under a statute, OCLA, § 114-121, authorizing cities to furnish water outside of their corporate limits. This is a tortured construction of plain evidence. Furthermore, the evidence concerning the road work done in the annexed area and the facts concerning the prepara-

tion of the new charter are undisputed. On what authority does the majority say that evidence of the exercise by the city of its municipal functions in the annexed area was "inadmissible"? And by what other method could de facto status be established? It is apparent that this little city was actively engaged in the exercise of its municipal functions over the purportedly annexed area and that in such exercise it must have entered into contracts, expended money, and have taken all of the preliminary steps necessary for the submission to the voters of the 1950 charter. Under the authorities exhaustively examined by Mr. Justice Lusk it is clear that the city of Estacada, as enlarged by the annexation proceedings, was a de facto corporation.

The reason for the rule which makes quo warranto the exclusive remedy in cases of this kind is apparent. A private party should not be permitted to take action which will retroactively invalidate official action by the city when it could have obtained complete relief at an earlier time without hardship to anyone. The result of the bringing of this private suit will be the invalidation of the entire attempted annexation. Thus, a private litigant will be permitted to assume the function which expressly vested in the state under the quo warranto statute. We are not dealing with mere rules of procedure which may be adopted or rejected at the option of the court. The public policy of the state has been expressed in statutory form and the decisions of this court which have held that quo warranto is the only available means of collateral attack upon a de facto corporation constitute merely the necessary application of the statutory policy. If the plaintiff prevails in this suit, then in what position will the city find itself? Who will be liable for the money expended?

Will some contractor lose because he cannot sue the city under an improvement contract, or will the city officials be required to pay all of the expenses incurred in the public improvements and in the preparation and submission of the charter amendment to the people? It is unnecessary to decide where the loss will fall, but fall it will, and all because the private plaintiff who could have enjoined the filing of the certificate with the Secretary of State saw fit to wait until the damage was done.

This is a little case involving a small municipality with only 150 or 200 voters, as indicated in the resolution adopting the 1950 charter. But it is a case with big implications in the law. If a private taxpayer can retroactively invalidate a municipal annexation after four or five thousand dollars have been expended, then he could do it in another case when a hundred thousand dollars had been expended, and he could do it after sitting by and watching the city officials taking the action which might bankrupt them or the city they represent.

I agree with all of the members of the court upon one point. In a proper action, taken by a proper party-plaintiff, at a proper time, the purported annexation should be held void in its entirety. But, if this kind of action can be brought in this case, it can also be brought when untenable grounds or no grounds exist for the invalidation, and municipalities can be hounded and compelled to defend themselves against suits brought too late at the individual whim of a private litigant. It was for the purpose of preventing this very type of litigation that the quo warranto statutes were enacted in this state. Under the provisions of OCLA, § 8-804, the action may be maintained in the name of the state upon the relation of a private party, but

"The actions provided for in this chapter shall be commenced and prosecuted by the prosecuting attorney * * *." OCLA, § 8-806. The relator merely verifies the pleadings in behalf of the state "as if he were the plaintiff in the action * * *." OCLA, § 8-806. If the relator has an interest in the question he "shall be deemed a co-plaintiff with the state." OCLA, § 8-806. Under the provisions of OCLA, § 8-807, it is made the duty of the prosecuting attorney to commence such action in every case of public interest "whenever he has reason to believe that a cause of action exists and can be proven, and also for like reasons in every case of private interest only in which satisfactory security is given to the state to indemnify it against the costs and expenses that may be incurred thereby." OCLA, § 8-807. These sections of the statute contemplate that the proceedings brought for the purpose of testing the incorporation or enlargement of a municipal corporation should be under the control of the state acting through its district attorney. It would be of interest to inquire why these precautions were adopted by the legislature for the protection of de facto corporations when attacked in the conventional manner by quo warranto if the identical relief sought could be obtained by a suit for injunction or for a declaratory judgment under the sole control of a private litigant. In determining whether a given procedure is appropriate, this court should not be influenced by the fact that it has decided in advance who ought to win. If the procedure adopted is correct, then it is correct regardless of the question as to whether the plaintiff or the defendant is entitled to win on the merits.

In *State ex rel. v. School District No. 23*, 179 Or 441, 172 P2d 655, an action was brought by the state

upon the relation of a private person seeking an adjudication that an order consolidating several school districts was invalid. The order was entered on 14 June 1945 and became effective on 1 July 1945. In September, pursuant to an election which had been held, a resolution was adopted for the sale of bonds, and on 19 November the bonds were awarded to the successful bidder, whereupon the action in quo warranto was instituted seeking an adjudication that the district was invalidly organized and seeking an injunction restraining the delivery of the bonds. The case has been reviewed in the dissenting opinion by Mr. Justice LUSK, but it is appropriate to mention here that the district was at least a de facto corporation, that it was not exempt from quo warranto proceedings, but that:

"* * * it does not necessarily follow that every person who chooses to denominate himself a relator and who seeks to challenge the validity of a municipal body which is engaged in administering public affairs, is at liberty to select his own time for launching the attack. * * *"

In a learned opinion by Mr. Justice ROSSMAN, this court said:

"* * * When a relator is seeking to avail himself of such an extraordinary remedy, the courts are justified in viewing his application with scrutinizing eyes, especially if it appears that the defendant whose office is attacked is serving the public interests without compensation."

The court then quoted with approval from *State ex rel. Jackson v. Mansfield,* 99 Mo App 146, 72 SW 471 as follows:

"'* * * We think every interest of the state, such as the public peace, the security of person and property and the payment of the city's debts would

be impaired rather than promoted by setting aside the incorporation at this late date and leaving the citizens without organization, administration or corporate privileges.' ''

Again we quote:

"* * * Nowhere is it averred that the state has displayed any interest whatever in this proceeding or in the questions and claims which the relator seeks to present. So far as appears from the agreed statement of facts, the state is satisfied with the defendant school district and does not challenge its validity. Again, returning to the agreed statement of facts, we find the following: 'The relator demands judgment against the defendants * * *.' Thus, it is the relator, and not the state, which seeks to blot out the defendant school district and throw into a condition of chaos the schools of that large area.''

The court pointed out that ''a scant year passed from the entry of the consolidation order to the filing of this proceeding'' and that no explanation of the delay had been given. It called attention to the deplorable results which would follow an adjudication of invalidity at that late date and said:

"* * * When anyone asks for a judgment attendant with such deplorable consequences, he should come prepared to explain his delay. * * *''

The court pointed out that the School District as a de facto corporation could defend itself against any proceeding which the plaintiff as an individual could maintain. It then held that even in quo warranto proceedings the plaintiff was barred by laches.

The essence of this recent case is that even though an action in the nature of quo warranto was brought, it savored so much of a private proceeding that the court refused to pass upon the issues concerning the

legality of the consolidation. If this was good law in a quo warranto case, and I think it was, then how can this court adopt a more lenient rule when this suit is brought by a private party without even the semblance of any participation therein by the state, and where the only relief sought is the protection of that portion of the annexed territory owned by the plaintiff.

In *School District v. School District,* 34 Or 97, 55 P 98, District No. 115 brought mandamus against District 54 for purposes which need not be described here. The defense was that the plaintiff was not an existing corporation. After reciting the defendant's contentions, Mr. Justice Robert S. Bean for this court said:

"These objections are, in our opinion, not available to the defendant, because the law is well established that the corporate existence of a school district, or other public or governmental corporation, created and organized under color of law, and in the exercise of its corporate powers, cannot be attacked, except in a direct proceeding instituted by the state for that purpose. * * *"

The court then quoted with approval from *Clement v. Everest,* 29 Mich 20, as follows:

" "* * * it would be dangerous and wrong to permit the existence of municipalities to depend on the result of private litigation. Irregularities are common and unavoidable in the organization of such bodies, and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons. * * *' "

In *State ex rel. v. School District No. 9,* 148 Or 273, 31 P2d 751, 36 P2d 179, quo warranto proceedings were brought upon relation of a private party. The court cited with approval *State ex rel. v. Cook,* 39

Or 377, 65 P 89, to the effect that whether an action is brought on the information of the prosecuting attorney or on the relation of a private party " 'in either case, it is made the duty of the prosecuting attorney to commence *and prosecute* the action'." (Italics mine.) The court then pointed out that it was the intention of the statute:

"* * * to confer upon private persons the right to have their interests determined by the court whenever the district attorney has reason to believe that a cause of action exists and can be proved, and the required indemnity has been given, and, in such case, to make it the duty of the district attorney to commence and prosecute the action to a final determination * * *."

In *School Dist. No. 1 v. School Dist. No. 45,* 148 Or 554, 37 P2d 873, this court quoted with approval from *State v. Consolidated Independent School District,* 193 Iowa 856, 186 NW 426, as follows:

" 'With full knowledge relators remained silent and permitted the organization of the district; witnessed the annual election in the following March; allowed the inauguration of a central school system; knew that the board of directors was entering into contracts with teachers and that taxes were being levied upon the property of the entire district, and finally upon the day a bond issue was voted asked leave of court to commence this cause of action. A recognition of such a right under the circumstances would cause irreparable injury to the district.' "

If the issue is to be considered one involving laches, then we should recognize that mere lapse of time in bringing a suit is not of the essence. It is delay which works injury to another which will bar relief to a litigant. If officials are acting to their detriment in reliance upon the existence of a valid annexation, then a short period of delay might well bar an action. If

no action is being taken by the city, the mere lapse of many months might not constitute laches. See *McIver v. Norman,* 187 Or 516, 205 P2d 137, 213 P2d 144; *City of Pendleton v. Holman,* 177 Or 532, 164 P2d 434. The essential issue, however, is not laches, though it is related to that doctrine. The point is, that during the delay in the bringing of the suit, the defendant city acted promptly and aggressively in exercising its corporate functions, and that the action thus taken was of such a nature as to constitute the enlarged city a de facto municipal corporation.

It is argued that any person threatened with substantial injury by the enforcement of a void act of a municipality has the right to protect himself by injunction, but I find no rule of law which holds that an injunction is a proper remedy in all cases. Remedies must be enforced at the time and in the manner provided by statute if an orderly system of procedure is to be maintained. It may be observed further that acts of municipal authorities involved in cases of this kind are not void if done by a de facto corporation, unless and until such acts are declared void in an action by the state. Furthermore there is no rule of law which provides that an injunction suit or a suit for a declaratory judgment may be brought by one party alone, when, by statute, the right to relief is vested only in two parties, the relator and the state. It is for this reason that we cannot construe the declaratory judgment statute as covering the case at bar. This case is not here on the pleadings alone. It was tried on the merits. Undisputed evidence was presented proving that the attack was being made against a de facto corporation. It then became the duty of the court to apply the rules applicable to such cases.

One other matter requires notice. The complaint

alleges that the annexation was for the sole purpose of subjecting the plaintiff's property to annexation without benefit. These allegations are denied by the answer. The case was tried upon the merits. In the concurring opinion by Mr. Justice ROSSMAN it is said that we must assume that the city admits the foregoing allegation of the complaint, but the issue before us does not arise upon a demurrer to the complaint. We are to determine on the entire record and testimony whether the remedy adopted is appropriate to the relief sought. The complaint itself alleges the adoption of the new charter for the enlarged area of the city. The undisputed evidence discloses that the city was in the active exercise of its municipal functions. If the pleadings and evidence show this to be an attack upon a de facto corporation, as I think they do, then it is our duty to apply the law as we find it.

The statute provides that an action at law may be maintained in the name of the state upon the information of the prosecuting attorney or on the relation of a private party when any number of persons act as a corporation without being duly incorporated. OCLA, § 8-804. The defendants are charged with acting as a corporation, having the boundaries which resulted from the annexation election, and the very essence of the case is that the city, as thus acting, was not duly incorporated. When enacted this statute was considered the exclusive remedy in cases of this kind. Our decisions have so held. The result of the majority decision is to render the statute mere surplusage in a wide field to which it has been held to apply. Hard cases make bad law, and this I think is such a case.

I am authorized to say that Mr. Justice LUSK and Mr. Justice HAY join in this opinion.